## VIEJO et al. v. UNITED STATES.

No. 3757.

Circuit Court of Appeals, First Circuit.

Jan. 19, 1943.

Hugh R. Francis and Jorge Ortiz Toro, both of San Juan, P. R., for appellants.

John P. Hearne and Vernon L. Wilkinson, Attorneys, Department of Justice, of Washington, D. C. (Norman M. Littell, Asst. Atty. Gen., on the brief), for appellee.

Before MAGRUDER, MAHONEY and WOODBURY, JJ.

PER CURIAM.

Under authority of 50 U.S.C.A. § 171, the United States on April 1, 1940, filed in the court below a petition for condemnation of 491.7 acres of land in Puerto Rico for military purposes. On the same day a declaration of taking was filed, under the Act of February 26, 1931, 46 Stat. 1421, 40 U.S.C.A. § 258a et seq., upon which judgment was immediately entered adjudging that title to the described parcels was vested in the United States and ordering surrender of possession forthwith, except that persons "now residing in houses located on said land" were permitted to re-main for a period not to exceed twenty days.

Subsequently the issue of just compensation came on for trial before the District Court, sitting without a jury. The compensation awarded to the various land owners is no longer in dispute. Living on the condemned property, with the consent of the owners, were numerous persons who had built their own shack-like homes and cultivated garden crops on patches around their homes. These persons, who are called "squatters" in the record, but who in fact were tenants at will, worked the sugar crops for the owners, and in the "dead season" lived for the most part on the produce of their gardens. It is not denied that these squatters were entitled to compensation for whatever might have been the value of their homes and of their growing crops. The District Court awarded compensation to them in sums ranging from $12 to $125.

Notice of appeal was filed by thirty-seven of the squatters, raising only the question of the adequacy of the compensation awards. Twenty-two of them duly prosecuted their appeals in forma pauperis. Counsel had lost touch with the other fifteen and were unable to procure from them the necessary affidavits of poverty; their cases are not now before us.

No award was made to Juan Santos or Florentino Rivera, two of the twenty-two who prosecuted their appeals. These two failed to introduce any evidence as to what they claimed to own or the value thereof. In these cases the judge had nothing to go on, and they were properly left out of the judgment.[1]

Photographs of the pathetic shacks in which these people lived were introduced in evidence. Some were made of thatched straw and palm leaves, others of rough boards, covered in part, in some cases, with pieces of zinc or tin scrap or galvanized iron. Some of the shacks appear to have been sturdily constructed, though not with an eye to architectural charm. In some instances the trial judge accepted the exact valuation put upon these shacks by

---

[1] All that appears in the record is that Santos and Rivera joined in a motion in the nature of a pleading, reciting that Santos owned a pigpen worth $5, a latrine worth $8 and garden crops worth $50; that Rivera owned garden crops worth $50 on the expropriated land; and praying that the court render judgment against the United States in the foregoing amounts. The expert witness for the squatters gave no testimony respecting the claims of Santos and Rivera, nor did these two join with the other squatters in the stipulation of testimony filed.

the Government's expert witness; in others he allowed a few dollars more. We cannot say that the judge's findings as to the values of these various shacks were "clearly erroneous" (Rule 52, Federal Rules of Civil Procedure, 28 U.S.C.A. following section 723c.).

The Government's expert witness on direct examination testified that in making his valuations he had left out the growing crops, because of their "poor condition". On cross-examination counsel for the squatters sought to examine the witness regarding crops, and this colloquy occurred:

"The Court: He hasn't testified about the growing crops; he said he didn't notice them, paid no attention to them.

"Q. You didn't notice them at all? A. I passed through there, but I didn't pay attention to that.

"Q. Isn't that yautias there?

"The Court: Why do you want to cross-examine the witness on something that he tells you he didn't pay any attention to? He gave it no consideration.

"Mr. Ortiz Toro: All right, I withdraw the question."

After this witness had testified as to the claims of some of the squatters it was agreed, in order to save time, that his testimony should be received in stipulation form. In this stipulation it was recited that the witness "would have testified that no vegetable gardens as such existed on the condemned premises, and that if any did exist which is by him denied, they were in such poor condition as to be completely worthless."

On the other hand, the expert witness called by the squatters testified in detail as to the garden crops owned by each of the squatters, and his testimony was supported by that of the squatters themselves. Most of the photographic exhibits disclose some garden crops growing around the homes, such as beans, banana plants and sweet potatoes. They may not have been fancy gardens, but they represented a living to these poor people and a finding that the gardens were nonexistent or completely worthless would have been clearly erroneous on this record.

■ In fact, the District Court made no such specific finding. Its only reference to the crops is the finding that "the fair market value of the buildings or crops situated or growing on parcel 3, claimed to be separately owned by the following named persons is the sum set opposite the names:" —then follows a lump sum award to each squatter. It does not appear that the court made any award for the garden crops. Thus, in the case of Loreto Gonzalez the court made an award of $40.87, which was the exact valuation which the Government's expert put upon the shack owned by this claimant. The expert witness for the squatters testified without contradiction that Gonzalez had "one acre of vegetable garden, including sweet potatoes, plantains, yautias and bananas," which he valued at $100. The testimony of Gonzalez, submitted in stipulation form, was to the same effect. Again, in the case of Adelina Cabrera, the court allowed $53 as against testimony by the Government's expert that her home was worth $52.62. It is evident that no allowance was made for the crops, though the expert witness for the squatters testified without contradiction that Cabrera had "three cuerdas of vegetables, including sweet potatoes, plantains, bananas, yautias", which the witness valued at $300. In other cases, also, the court's award was almost exactly in the sum testified to by the Government's expert as the value of the shack. In the cases where the court awarded a few dollars more than the figure given by the Government's expert, it does not appear that part of these awards represented allowances for the value of the garden crops of the particular claimants. On the record there is not the slightest basis for the assumption that Gonzalez and Cabrera had no garden crops of any value, whereas, the crops of certain other squatters were worth a few dollars. So far as we can make out from the record, the court (though it does not say so) seems to have accepted the statement in the stipulated testimony of the Government's expert that the garden crops were either nonexistent or completely worthless—this despite the colloquy, quoted above, which occurred during the oral examination of this witness.

It is easy for people in comfortable circumstances to regard as of little or no value the meager possessions of poverty-stricken people. The oral testimony of the Government's expert witness discloses in spots a somewhat contemptuous attitude toward these humble squatters. Rather than to lend any seeming countenance to this attitude, it is better that the great government of the United States should err

a little on the side of generosity in exercising the power of eminent domain.

So far as the judgment of the court below concerns the squatters who prosecuted their appeals (with the exception of Santos and Rivera), the judgment will have to be vacated and the case remanded to the District Court with instructions to make findings as to the value of the garden crops and to increase the awards to these claimants by the respective amounts so found.

Though it would seem to be unfortunate not to treat all the squatters alike, we cannot make a similar direction with reference to the squatters who failed to prosecute their appeals. We intimate no opinion on the question whether, after our dismissal of these appeals for want of prosecution, the court below would still have discretionary power to reopen the awards to this group of squatters.