UNITED STATES of America, Plaintiff-Appellee,

v.

88.28 ACRES OF LAND, MORE OR LESS, SITUATED IN PORTER COUNTY, STATE OF INDIANA, et al., Defendants.

Appeal of Mary W. CRUMPACKER et al.

No. 78–1037.

United States Court of Appeals, Seventh Circuit.

Argued Oct. 2, 1979.

Decided Nov. 7, 1979.

Jeffrey N. Cole, Chicago, Ill., for defendants.

Robert W. Frantz, Dept. of Justice, Washington, D. C., for plaintiff-appellee.

Before CUMMINGS, PELL and BAUER, Circuit Judges.

PELL, Circuit Judge.

On October 10, 1970, the plaintiff-appellee, the United States of America, filed a complaint in condemnation to acquire land for the Indiana Dunes National Lakeshore. Although the complaint encompassed several tracts of land, see Fed.R.Civ.P. 71A(b), this appeal concerns only the tract numbered 02–128, a parcel of some 80 acres. Included among those named as defendants in the complaint were the numerous Crumpackers [1] and Edward Warner and his wife. The Crumpackers were denominated in the complaint as "purported owners," the Warners as "other parties who may have or claim an interest in the land." On August 22, 1977, the day set for trial, the trial court on the Government's motion dismissed the Crumpackers from the action without prejudice. The action then proceeded against the Warners and a trustee bank. The jury valued the condemned tract at $120,000 and a judgment ordering that amount be paid over to Warner was entered. The award has since been paid to Warner. It is from that judgment that the Crumpackers appeal.

The ultimate controversy here concerns the appellants' right to share in the proceeds of the condemnation award. This in turn requires an understanding of the rather unsettled state of the title to the tract at the time that the government initiated this action. In the 1940s Frederick C. Crumpacker was the fee simple owner of the tract. Apparently, Frederick permitted taxes on the land for 1946 and the years following to become delinquent, and the parcel was sold at a tax sale to Edward Warner in 1949. A tax deed purporting to transfer the fee was issued to Warner in 1951 and the deed was duly filed in the Porter County Recorder's Office. In 1956 Mary W. Crumpacker and others commenced a suit to quiet title against Warner in the Porter County Circuit Court. *Mary W. Crumpacker v. Edward Warner*, No. 16501 (filed Nov. 5, 1956). (Apparently, sometime in the late 1940s Frederick C. Crumpacker had died). Redemption costs in the amount of $3,169.87 were deposited with the court. The nature of the Crumpackers' claim to the property in that action does not appear in the record, and, unfortunately, apparently neither the case file nor the docket sheet in the suit can be located.

---

1. Although it is not entirely clear from the record, the complaint apparently sought to join as parties-defendant the heirs of Frederick C. Crumpacker. Specifically named were Cully, James, Edgar Dean, Peter, Florence, and Mary W., as well as the unknown heirs of Edgar D. Crumpacker and Frederick C. Crumpacker. The Crumpackers have also figured in related condemnation actions before this court. *See United States v. 416.81 Acres of Land*, 525 F.2d 450 (7th Cir. 1975); *United States v. 416.81 Acres of Land*, 514 F.2d 627 (7th Cir. 1975).

The action remains pending in the Indiana state court, some twenty-three years after its commencement.

Thus, when it sought to condemn the land in 1970, the Government found the title clouded by conflicting claims to the fee by the heirs of Frederick Crumpacker and by Edward Warner. The Government maintains that the public land records by virtue of the tax deed showed the fee in Warner. The validity of that deed, however, seemed to be a matter of some dispute and a title insurance company had issued a preliminary report indicating that the Crumpackers were the owners of undivided interests in the land, subject to several reservations including the tax deed to Warner. Therefore, the Government named the Crumpackers in its complaint in an attempt to join all possible holders of any interest in the property.

On May 20, 1977, for reasons which again do not appear in the record, the title insurance company issued a policy on the tract, this time naming Warner as the owner in fee simple of the tract. The policy does not exempt from coverage any claims of the Crumpackers. On the basis of this policy, the Government, shortly before the day set for trial, moved to dismiss the Crumpackers from the action. The Crumpackers filed a brief in opposition and the trial court heard arguments on the day scheduled for trial. During these arguments, the Government's position seemed to change. Instead of asserting that the Crumpackers had no interest in the tract, the Assistant United States Attorney argued that either Fed.R.Civ.P. 71A(f) or 71A(i) gave the Government the right to dismiss without prejudice any defendant it deemed improvidently joined.

The attorney for the Crumpackers, on the other hand, argued that the Civil Rules gave the Government no such discretion and that the dismissal would prejudice the rights of the true owners—the Crumpackers. The trial court agreed with the Government's position and dismissed, without prejudice, the Crumpackers from the suit.

This appeal does not involve the right of the United States to condemn tract 02–128. What is at issue is the right of the Crumpackers to "present evidence as to the amount of the compensation to be paid for [the] property" and to "share in the distribution of the award." Fed.R.Civ.P. 71A(e). Before this court the Crumpackers once again assert, with scant support in the record and without further explanation, that they are the owners of the condemned tract of land. They renew the objections that they had made before the trial court that the dismissal from the action was unauthorized by the Civil Rules and in derogation of their right to just compensation secured by the Fifth Amendment. The Government, on the other hand, seems to have changed its position from the one it took before the trial court. The Government now urges this court to take judicial notice of the tax deed showing title in Edward Warner—a document which it concedes was not before the district court. This deed, the Government asserts, shows that the Crumpackers were not the true owners of tract 02–128 and therefore were properly dismissed from the action.

It is uncontested that the propriety of the dismissal of the Crumpackers is governed by Fed.R.Civ.P. 71A(i).[2] Paragraphs (1)

**2.** Subdivision (i) of Civil Rule 71A provides:

(i) Dismissal of Action.

(1) As of Right. If no hearing has begun to determine the compensation to be paid for a piece of property and the plaintiff has not acquired the title or a lesser interest in or taken possession, the plaintiff may dismiss the action as to that property, without an order of the court, by filing a notice of dismissal setting forth a brief description of the property as to which the action is dismissed.

(2) By Stipulation. Before the entry of any judgment vesting the plaintiff with title or a lesser interest in or possession of property, the action may be dismissed in whole or in part, without an order of the court, as to any property by filing a stipulation of dismissal by the plaintiff and the defendant affected thereby; and, if the parties so stipulate, the court may vacate any judgment that has been entered.

(3) By Order of the Court. At any time before compensation for a piece of property has been determined and paid and after motion and hearing, the court may dismiss the action as to that property, except that it shall

and (2) of subdivision (i) are inapplicable on their face. Paragraph (1), which provides when the Government can dismiss the action as of right, applies only to a dismissal of the action "as to that property." Here, the dismissal was only of particular individual defendants, not of the action against the property as a whole. Paragraph (2) provides for dismissal by the stipulation of the parties. The parties here obviously did not reach such an agreement. It is the last sentence of paragraph (3) which determines the propriety of the trial court's dismissal of the Crumpackers as defendants. Paragraph (3) governs dismissals which require the order of the court. The last sentence of that paragraph provides: "The court at any time may drop a defendant unnecessarily or improperly joined." The Advisory Committee Note accompanying Rule 71A explains the purpose of the final sentence of 71A(i)(3) as follows: "In line with Rule 21, the court may at any time drop a defendant who has been unnecessarily or improperly joined as where it develops that he has no interest." 11 F.R.D. at 243.

■ The Government cannot seriously contend that the Crumpackers were improperly joined as defendants. Civil Rule 71A(c)(2) provides in pertinent part:

Upon the commencement of the action, the plaintiff need join as defendants only the persons having or *claiming* an interest in the property *whose names are then known,* but prior to any hearing involving the compensation to be paid for a piece of property, the plaintiff shall add as defendants all persons having or *claiming* an interest in that property whose names can be ascertained by a reasonably dili-

gent search of the records, considering the character and value of the property involved and the interests to be acquired, and *also those whose names have otherwise been learned.* (emphasis added).

Thus, it is not necessary that a person actually own an interest in the parcel to be properly joined as a defendant in a condemnation action. A person is properly joined if he claims such an interest. *See United States v. Certain Parcels of Land,* 339 F.2d 414, 416 (3d Cir. 1964). Here, there is little question but that the Crumpackers, by virtue of either the pending quiet title suit in the Indiana state court or the title insurance policy showing the title in them, claimed to have an interest in the property which claim was known by the Government. They were properly joined.

The Advisory Committee comments suggest that a properly joined party may later be dismissed "where it develops that he has no interest." The Government now contends that the Crumpackers in fact had no interest in the condemned tract so that their dismissal was proper. There are, however, several problems with the Government's argument.

■ First, the trial court did not in fact find that the Crumpackers had no interest in tract 02–128. The dismissal of them from the suit was without prejudice. *See* Fed.R.Civ.P. 71A(i)(4). A reading of the transcript of the hearing on the Government's motion to dismiss shows that the court did not determine whether the Crumpackers had any title or even a colorable claim to title to the parcel.[3] Even if this

not dismiss the action as to any part of the property of which the plaintiff has taken possession or in which the plaintiff has taken title or a lesser interest, but shall award just compensation for the possession, title or lesser interest so taken. The court at any time may drop a defendant unnecessarily or improperly joined.

(4) Effect. Except as otherwise provided in the notice, or stipulation of dismissal, or order of the court, any dismissal is without prejudice.

Subdivision (f) of the Civil Rule which governs the amendment of the pleadings was also relied

upon by the Government before the district court. That subdivision, however, is expressly made subject to subdivision (i). Subdivision (f) provides in pertinent part:

Without leave of court, the plaintiff may amend the complaint at any time before the trial of the issue of compensation and as many times as desired, but no amendment shall be made which will result in a dismissal forbidden by subdivision (i) of this rule.

3. The Court: I don't consider it adjudication. This Court is not adjudicating ownership of this tract.

court were willing to pass on the title to the Indiana land without the benefit of an initial determination by the trial judge familiar with Indiana law, there is insufficient evidence in this record to determine the title to the land condemned. Ordinarily one would expect an abstract of title or the opinions of experts who had searched the public records as well as copies of the relevant title documents to be introduced into evidence before passing on the question. Here, the only evidence in the record is several unauthenticated and conflicting title insurance policies and a copy of the tax deed, the validity of which is contested.

Ignoring the above deficiencies in the record, the issue of the Crumpackers' title to the land still cannot be determined, as the Government would apparently have this court do, as a matter of law. The Government argues that the Crumpackers were properly dismissed since, first, they were "given ample opportunity to present a colorable claim to title" and failed to do so, and, second, any colorable claim they may have had was barred under Indiana law.

■ As to the Government's first contention, it is not at all clear from an examination of the record that the Crumpackers were given any opportunity to present any claim of title. The Government's complaint named the Crumpackers as the "purported owners" of the property, but did not mention that the title was subject to dispute. Negotiations between the parties had apparently proceeded on the assumption that the Crumpackers were the owners of the realty. Although the Government's complaint naming the Crumpackers as owners cannot be taken as an admission that they were the owners in fact, it was sufficient to permit them to treat the issue of title as one not the subject of serious dispute. The

Government's motion to dismiss was mailed to the defendants on August 17, 1977, just six days prior to the day set for trial on the issue of compensation. As noted above, on that day the court permitted argument on whether to grant the motion, but it did not permit the Crumpackers to try the issue of the title to the land. Under the circumstances, the Government cannot be heard now to say that the Crumpackers had ample opportunity to present a colorable claim against the land. The Government's citation to *Viejo v. United States*, 133 F.2d 84, 85 (1st Cir. 1943), is inapposite. In *Viejo*, claimants simply failed to introduce any evidence that they owned any of the property condemned. Here, the Crumpackers were not even afforded the opportunity to present evidence of their claims.

■ The Government cites the 1951 edition of the Burns Indiana Code in an attempt to prove that the Crumpackers' suit to quiet title in 1956 was untimely. The provision apparently relied on by the Government states: "No action to contest the validity of any title acquired as a result of any sale of any real estate under this act [relating to tax sales] shall be brought after the expiration of any one year from the date of the execution of the [tax] deed." It must be remembered that Edward Warner's claim of title rests on a tax deed, a document not always regarded highly by the courts. Because purchasers at tax sales often pay only a small percentage of the true value of the land sold, the courts have been reluctant to disseize a delinquent landowner and have relied upon sometimes minor irregularities in the assessment of the tax or in the conduct of the tax sale in order to invalidate the deeds. *See Long v. Anderson*, 536 F.2d 739 (7th Cir. 1976) (applying Indiana law). The statute of limita-

---

The Court: What rights of your clients are being litigated? That is what I don't understand. The point as I understand it, the Government is saying "We do not believe that your clients have any interest in the land", and they have a right to make that determination, as to whom they are going to sue.

Mr. Crumpacker: I don't think so.

The Court: There is no adjudication as far as your clients are concerned.

. . . . .

The Court: I cannot dismiss you with prejudice, your clients are not being affected by this at all, it is not binding on your clients what happens here. I am not dismissing it with prejudice.

(There was further colloquy of similar import.)

tions purporting to shield a tax deed from attack after one year has, accordingly, been given a narrow construction by the Indiana courts despite its seemingly broad terms. *See Langford v. De Armond,* 137 Ind.App. 439, 447–48, 208 N.E.2d 692, 697 (1965) (limitation period does not begin to run until the purchaser goes into possession of the land); *Gradison v. Logan,* 135 Ind.App. 185, 190 N.E.2d 29 (1963) (substantial irregularities in procedure prior to or during tax sale render subsequently issued tax deed void *ab initio.* Such a deed is not protected from later attack by the statute of limitations). Thus, we cannot say with certainty on the basis of the meagre record before us that the Crumpackers' quiet title suit was untimely under Indiana law or that their claim to the property is without merit.

 The district court clearly had the power to settle the conflicting claims to the title of the condemned land. As the court in *United States v. 1,629.6 Acres of Land,* 503 F.2d 764, 766 (3d Cir. 1974), stated:

The district court clearly has jurisdiction in a condemnation proceeding brought by the United States government to fix the amount of compensation awarded, and to apportion it among the claimants, 6 J. Moore, Federal Practice ¶ 71A.10[1]. Moreover, this latter right necessarily includes the power to determine who among competing claimants owns the condemned land. *See United States v. 22,680 Acres of Land,* 438 F.2d 75 (5th Cir. 1971); *United States v. Atomic Fuel Coal Co.,* 383 F.2d 1 (4th Cir. 1967); *Tyson v. Iowa,* 283 F.2d 802 (8th Cir. 1960); *Clark v. White,* 185 F.2d 528 (5th Cir. 1950).

Indeed, the decisions of several federal courts indicate that "a federal district court may not decline to exercise its jurisdiction to determine the true owners of condemned land when such jurisdiction is timely invoked." *United States v. 22,680 Acres of Land,* 438 F.2d 75, 77 (5th Cir. 1971). *See, e. g., Bullen v. De Bretteville,* 239 F.2d 824, 830 (9th Cir. 1956), *cert. denied,* 353 U.S. 947, 77 S.Ct. 825, 1 L.Ed.2d 856 (1957):

It is a basic principle of law that when a parcel of land is condemned, all persons possessing any interest in the property, legal or equitable, may be parties defendant in the proceedings. *United States v. Adamant Co.,* [197 F.2d 1 (9th Cir.), *cert. denied,* 344 U.S. 903, 73 S.Ct. 283, 97 L.Ed. 698 (1952)]; *Swanson v. United States,* 9 Cir., 156 F.2d 442; *United States v. Block,* 9 Cir., 160 F.2d 604. Alleging an interest in the property, appellants were entitled to be heard on the matter and if their claim were sustained, to share in the proceeds. *United States v. Adamant Co., supra; Swanson v. United States, supra.* . . . Indeed, it is the duty of the District Court in distributing the condemnation fund to ascertain who is entitled to participate therein. There can be no just compensation, as the Constitution requires, if the fund is dispersed to the wrong persons. *Clark v. White,* 5 Cir., 185 F.2d 528. As the Supreme Court of California succinctly observed:

"It is one of the functions of a condemnation suit to determine as between the defendants, who is the owner of the property and therefore entitled to the compensation for its taking." *Anderson v. Citizens Savings & Trust Co.,* 185 Cal. 386, 391, 197 P. 113, 116.

The broad joinder provisions of Civil Rule 71A discussed above seem to contemplate that the district court will determine both the issue of just compensation and the issue of the entitlement of competing claimants to the condemnation award.[4] The latter

---

4. This is not to say that in an appropriate case the district court could not defer deciding which of the claimants is entitled to compensation pending resolution of their competing claims in another action. *See* 7 Moore's Federal Practice ¶ 71A.10[1] at 71A–250 to –251 & n.9 (2d ed. 1979). For example, because at least one suit between the Crumpackers and the Warners is pending in state court, the federal district court could have withheld apportioning and awarding payment of compensation until resolution of the issue by the state court. Such a procedure would not necessarily delay the Government's right to take possession of the land, because the order in which the issues of just compensation and the entitlement of

issue is a question for the court, not the condemnor. We hold that the dismissal of the Crumpackers from the suit without determining if they had an interest in the condemned land was error.

■ Although we believe that the dismissal of the Crumpackers was error, we do not believe that it affected their substantial rights. The defect in the proceedings is, therefore, an insufficient basis for disturbing the judgment of the trial court. Fed.R. Civ.P. 61.

The Crumpackers have not suggested in their appellate brief or during oral argument how the action of the district court prejudiced them. In fact, they have been peculiarly silent about the nature of their claimed interest in the land and on what basis they seek to invalidate the tax deed issued to Warner—a document which appears valid on its face. Although, as we have stated before, we are not passing on the validity of the Crumpackers' claim to tract 02–128, we do note that their claim seems unlikely to be a good one. The Government, which we assume would not casually undertake the risk of incurring double liability with respect to the land, has deemed the risk so insubstantial in this case that it is willing to have the Crumpackers dismissed without prejudice. Moreover, a title insurance company, which would be unlikely to insure without reservation a title which was the subject of serious dispute, has apparently seen fit to issue a policy guaranteeing title in Warner. Finally, the Crumpackers themselves have not shown themselves to be particularly diligent in prosecuting their quiet title action against

Warner in the Indiana state court. If their claim to the parcel were meritorious, we would expect to see the action brought to judgment sooner than twenty-three years after its commencement. Although crowded dockets in the state court could explain some of this delay, twenty-three years appears to be an inordinately large lacuna in the progress of a lawsuit and suggests nonprosecution in realization of the weakness of their claim on the part of the Crumpackers.

■ In the unlikely event that the Crumpackers do have a meritorious claim, the district court's dismissal of them from the condemnation proceedings does not leave them without a remedy. The district court's dismissal was, of course, without prejudice to the right of the Crumpackers to pursue their claim in another action. *See* Fed.R.Civ.P. 71A(i)(4). A claimant omitted from a condemnation proceeding may pursue an inverse condemnation claim for just compensation against the Government in the Court of Claims. *United States v. 416.-81 Acres of Land*, 525 F.2d 450, 452 (7th Cir. 1975); *United States v. 22,680 Acres of Land*, 438 F.2d 75 (5th Cir. 1971); 12 C. Wright & A. Miller, Federal Practice and Procedure § 3045 (1973). That tribunal is no stranger to claims such as those advanced by the Crumpackers here. *See, e. g., Bourgeois v. United States*, 545 F.2d 727, 729 n.1 (Ct.Cl.1976) ("the Court of Claims is an appropriate forum where plaintiff can try title by seeking just compensation for the taking of land by the United States"); *Walker v. United States*, 428 F.2d 1229, 192 Ct.Cl. 805 (1970).

competing claimants to the fund are tried is a matter largely within the discretion of the trial judge. The claims of competing parties claiming title to land may be resolved first and, once the validity of the claims is declared, trial held on the issue of just compensation. *United States v. Atomic Fuel Coal Co.*, 383 F.2d 1, 3 (4th Cir. 1967) (recommending this procedure); *see Tyson v. Iowa*, 283 F.2d 802 (8th Cir. 1960). On the other hand, it would seem permissible, once all ascertainable claimants have been joined, to try the issue of compensation first, have the Government pay the lump sum award into court, and permit the claimants to resolve their conflicting claims against the fund afterward. 2 Nichols' The Law of Eminent Domain

§ 5.2[2] (3d rev. ed. 1978); *United States v. 3,276.21 Acres of Land*, 194 F.Supp. 297, 300 (S.D.Cal.1961) ("Any contest between persons claiming an interest in the award is heard by the Court and not the jury and only after the award for all interests in the land has been made"); *see Hardison v. McCreary*, 304 F.2d 699 (5th Cir. 1962); *Clark v. White*, 185 F.2d 528 (5th Cir. 1950). The latter procedure would permit the Government to take prompt possession of the condemned land and leave the competing claimants to litigate among themselves, either in the federal court or in appropriate cases in another forum, the issue of who is entitled to the just compensation.

We realize that the federal district court is the preferred forum when the Government has initiated condemnation proceedings, *see generally Georgia-Pacific Corp. v. United States,* 568 F.2d 1316 (Ct. Cl.), *cert. denied,* 439 U.S. 820, 99 S.Ct. 84, 58 L.Ed.2d 111 (1978), and that the Court of Claims "has been characterized as a 'distant and unfamiliar tribunal and one more expensive and time-consuming than a local federal district judge.'" Steadman, *"Forgive U.S. Its Trespasses?": Land Title Disputes With the Sovereign—Present Remedies and Prospective Reform,* 1972 Duke L.J. 15, 77. The result we reach here, however, does not necessarily require the Crumpackers to litigate their claim in the Court of Claims. Although this court has stated that "[t]he failure to join a party does not defeat the condemnor's title to the land," *United States v. 416.81 Acres of Land,* 525 F.2d 450, 452 (7th Cir. 1975), there is some authority supporting the view that defects in a condemnation proceeding can be so egregious that the proceeding does not affect the title to the land of an omitted party. *United States v. Chatham,* 323 F.2d 95 (4th Cir. 1963). Here, the omission of the Crumpackers from the condemnation proceeding could hardly be deemed to have been inadvertent or the result of an oversight. The record here indicates that the district court believed that the dismissal would not affect the Crumpackers' title to the condemned land if it did develop that they were the true owners. *See* note 3 *supra.* This would, as the Government suggested during oral argument, permit the Crumpackers to adjudicate the disputed title to the property against the United States in the district court pursuant to 28 U.S.C. §§ 1346(f) and 2409a.[5] If the Crumpackers prove their title to be superior to that of the Government in such a quiet title suit, the Government then could elect to condemn the parcel once again. 28 U.S.C. § 2409a(b).

Thus, regardless of the effect of the judgment of the district court on the title to tract 02–128—yet another question which we do not decide here—the Crumpackers retain their right to seek compensation from the Government. This being the case, we are reluctant to disturb on appeal what has been accomplished in the trial court. If it develops that the Government must pay twice in order to secure the land, that is a result which it itself invited. Under the circumstances of this case and because the Government is willing to assume such a risk, we fail to see that the interests of the omitted parties have been prejudiced.

The result we reach here also takes cognizance of the difficult situation which would result if we remanded for further proceedings in the present suit. The practical difficulties of unscrambling the situation resulting from the court's action of sustaining the motion to dismiss by further proceedings in the present litigation cannot be ignored. Because of the action taken in the district court the money has been paid over to Warner. It might or might not now be recoverable, dependent upon his financial responsibility. The Crumpackers, in any

---

5. 28 U.S.C. § 2409a(a) is a waiver of immunity by the United States to suits to quiet title brought against it. *See generally California v. Arizona,* 440 U.S. 59, 99 S.Ct. 919, 59 L.Ed.2d 144 (1979); Steadman, *"Forgive U.S. Its Trespasses?": Land Title Disputes With the Sovereign—Present Remedies and Prospective Reform,* 1972 Duke L.J. 15. 28 U.S.C. § 1346(f) provides that the federal district court shall have "exclusive original jurisdiction" under suits brought under section 2409a. Thus, although if the Crumpackers merely seek to recover just compensation against the Government for the taking of the parcel, the Court of Claims would have exclusive jurisdiction over the claim since it obviously exceeds $10,000, *see* 28 U.S.C. §§ 1346(a)(2), 1491, *Bourgeois v.*

*United States,* 545 F.2d 727 (Ct.Cl.1976), by framing their lawsuit as one for the recovery of the property rather than one for just compensation, they apparently can place the suit within the exclusive jurisdiction of the federal district court. *See* H.Rep. No. 92–1559, 92 Cong., 2d Sess., *reprinted in* [1972] U.S.Code Cong. & Admin.News, pp. 4547, 4552, 4555, 4556. This does not contravene the proviso in 28 U.S.C. § 2409a(a) that the section does not apply to "actions which may be or could have been brought under sections" 1346 or 1491, because although the Court of Claims can entertain suits for the recovery of money, it traditionally has been without jurisdiction over suits seeking relief declaratory in nature. Steadman, *supra,* at 77 n. 270.

event, to the extent they have a claim, have one against the Government and not against Warner. They must recover, if they do so, upon the strength of their own title and they have forums available for that purpose.

We do not recommend that the Government take it upon itself to determine who is a proper party defendant in condemnation actions in the future. The rules vest that power in the court. Dismissal of properly joined parties leaving them to renew their claims elsewhere results in the circuity of action which it was the purpose of the Civil Rules to prevent[6] and may in an appropriate case lead to reversal on appeal. We merely hold that in this case the error did not prejudice the omitted parties substantial rights. Accordingly, the judgment of the district court is affirmed.

Affirmed.

---

6. *See* Advisory Committee Note to Rule 71A(i): Both the right of the plaintiff to dismiss by filing a notice of dismissal and the right of the court to permit a dismissal are circumscribed to the extent that where the plaintiff has acquired the title or a lesser interest or possession, viz, any property interest for which just compensation should be paid, the action may not be dismissed, without the defendant's consent, and the property owner remitted to another court, such as the Court of Claims, to recover just compensation for the property right taken. Circuity of action is thus prevented without increasing the liability of the plaintiff to pay just compensation for any interest that is taken.
11 F.R.D. at 243.