Emma **HOUSER**, a widow, and Frances Houser Larson Hampton, a married woman, dealing with her sole and separate property

v.

The **UNITED STATES**

and

The State of Idaho, Third-Party defendant.

No. 559–77.

United States Claims Court.

Oct. 11, 1985.

John H. Bengtson, Lewiston, Idaho, for plaintiffs.

Alan Brenner, Washington, D.C., with whom was Asst. Atty. Gen. F. Henry Habicht, II, for defendant.

Robie G. Russell, Boise, Idaho, for third-party defendant.

## OPINION

YOCK, Judge.

Plaintiffs seek just compensation under the Tucker Act, 28 U.S.C. § 1491 (1982), for the alleged taking by condemnation of land which they claimed to own along the Snake River in the City of Lewiston, Idaho. This land was condemned in a United States district court condemnation proceeding to which plaintiffs were not named as parties nor personally served with notice of the action. Plaintiffs argue that at the time of the taking, they were the fee owners of the condemned property and that compensation was paid to the wrong party, *i.e.*, the State of Idaho, the third-party defendant herein.

The plaintiffs have now moved for partial summary judgment asking this Court to declare the plaintiffs to be the true owners in fee of the real estate that was condemned. The Government and the third-party defendant have cross-moved on the issue of ownership. In addition, the Government has moved for summary judgment claiming that the prior condemnation judgment of the United States District Court for the District of Idaho, which found the State of Idaho to be the fee owner of the land in question, is *res judicata* of the plaintiffs' present claim.

For the reasons discussed herein, the parties' motions are denied.

### Facts

On December 18, 1972, the defendant filed a Complaint, Notice and Declaration of Taking in the United States District Court for the District of Idaho in Civil No. 3–72–52, *United States of America v. 8.32 Acres of Land, more or less, et al.*, con-

demning in fee a 3.12 acre parcel of land known as Tract 1202 located in the City of Lewiston, Nez Perce County, Idaho. The State of Idaho and "any and all unknown owners" were named as defendants in the action. Tract 1202, taken by the United States Government for the Lower Granite Lake and Dam Project, is bordered on the west by the Snake River, and on the east by land acquired by plaintiffs in 1945 and referred to as Tract 1201. As a result of the filling of the reservoir created by the Lower Granite Lake and Dam Project, Tracts 1201 and 1202 are now both submerged under several feet of water, except for a portion occupied by a United States levee, constructed by the U.S. Army Corps of Engineers.

Both Tracts 1201 and 1202 were initially a part of an 88.5 acre tract fronting on the eastern bank of the Snake River, which was acquired by patent from the United States in 1882 by one William T. Cox. Between 1882 and 1898 when he died, Mr. Cox proceeded to lay out and record a subdivision on the patented land known as "Cox's Addition To The City of Lewiston." In addition, he subdivided and sold off parcels of land out of the patented tract to various unrelated purchasers, and he dedicated certain streets to the city.

Upon Mr. Cox's death in 1898, an administrator was appointed by the probate court of Nez Perce County to settle his estate. One of the first acts of the administrator was to petition the court to sell all of the real and personal property remaining in the estate to satisfy outstanding debts since Mr. Cox's debts were in excess of his assets. After the court had granted the administrator's petition to sell all assets, the administrator published a Notice of Sale of all of Mr. Cox's real estate in the Lewiston Idaho Tribune. The real estate at issue here that was to be sold was described in the following legal description:

That tract or parcel of land lying and being in the county of Nez Perce, state of Idaho, as follows: Commencing at the South West Corner Lot (3) three, Section (1) one, township 35, N.R. 6 W.B.M.,

thence in a northerly direction down east bank of Snake river 924 feet; thence east 450 feet; thence south 900 feet; thence west 400 feet to point of beginning, *containing (6) six acres* more or less, * * *. [Emphasis supplied.]

A sale was held pursuant to the notice of the administrator who reported to the probate court on June 23, 1899, that only one bid was received for $900 from a Mrs. N.C. Sanford. The administrator's Return Of Sale recites that the property actually sold to Mrs. Sanford is described by an amended description. The document stated:

[T]he said real estate is thereupon sold to her for the price aforesaid; the property actually sold of which the following is an amended description, is described as follows[s] viz;

The part of Lot 3, Sec. 1, Tp. 35, N.R. 6, W.D.M., commencing at a stone marked with a cross at the Southwest corner of the 40 acres now owned by W.H. Holcomb in said Lot 3; thence North 333.2 feet on the West line of said 40 acre lot, to a point; thence N. 84° W. 178.2 feet, on the South boundary line of the Cox Addition to Lewiston, Idaho, to a point; thence S. 6° W. 20 feet on the east line of Montgomery Street in the Cox Addition to the intersection of the West line of said Montgomery Street with the South line of the 40 foot Street on the South boundary of the Cox Addition; thence on the South line of said 40 foot street 245 feet to the meander line of Lot 3, Sec. 1 Tp. 35, N.R. 6 W.B.M/, thence Southerly on said Meander line 354 feet to a point on the South line of lot 3, distant Thence East on the South line of Lot 3, 465 feet to the point of beginning, *containing 3.28 acres*, in Nez Perce County, state of Idaho. [Emphasis supplied.]

The real estate sold to Mrs. Sanford from the Cox estate by that Return of Sale document differs substantially from the real estate offered for sale by the Administrator. Mrs. Sanford's legal description differs in four respects: (1) the legal descrip-

tion commenced at a stone monument which was not described in the legal description contained in the Notice of Sale; (2) the property is described by metes and bounds instead of section, township and range; (3) the western boundary is now referred to as a meander line instead of the east bank of the Snake River; and (4) it concludes by stating "containing 3.28 acres." The words "more or less" are omitted. This amended 3.28 acre description given to Mrs. Sanford in 1899 is used in every subsequent conveyance in the chain of title to Tract 1201 down to the deed to the Housers in 1945, with the minor exception being that in the deed from Guy Richards to the Housers in 1945, the phrase "more or less" is inserted after the 3.28 acres.

Prior to the filing of the condemnation action regarding Tract 1202 on December 18, 1972, the defendant conducted a formal title search. The title company employed by the Government, The Title Insurance Company of Boise, Idaho, issued its Second Preliminary Certificate of Title to the Government on June 8, 1972, which showed Tract 1202 to be vested in fee simple in the State of Idaho. Among the exceptions to free and clear fee title listed on Schedule B of the title report, however, was the "right, title and interest of Emma Houser and Frances Houser Larson by virtue of the fact this land is an extension to the west of their property on the East and could be determined to be land gained by accretion."

Notwithstanding the exception clearly listed in the defendant's title report, the plaintiffs were not named as interested parties to the condemnation action, nor were they or any agents of plaintiffs served personally with process of summons and complaint. The Government did publish the appropriate and routine notices to unknown owners. Upon a Stipulation between the defendant and the State of Idaho, judgment in the sum of $34,320 was rendered by the District Court for the District of Idaho as just compensation for the taking, and distributed in full to the State of Idaho on or shortly after December 18, 1972.

On May 22, 1973, defendant condemned a part of Tract 1201 which lay immediately to the east of Tract 1202 in *United States of America v. 1.75 Acres of Land, more or less situate in Nez Perce County, State of Idaho, Emma Houser, et al.*, Civil No. 3–73–24. The plaintiffs in this action were personally served with process of summons and complaint in the Tract 1201 condemnation action. This taking was also for the Lower Granite Lock and Dam Project. In March 1976, while awaiting trial in that action, the plaintiffs attempted to reopen the Tract 1202 condemnation judgment and have it consolidated for trial with the Tract 1201 action, since they were claiming ownership of both contiguous tracts of land. The District Court, however, refused to reopen the 1202 judgment rendered in 1972 and suggested that the Tucker Act permitted a claim to be made to the U.S. Court of Claims. The District Court then proceeded to render judgment on the 1201 action.

Plaintiffs thereafter filed suit on November 18, 1977, in the United States Court of Claims, this Court's predecessor. The case was transferred to this Court on October 1, 1982, pursuant to section 403(d) of the Federal Courts Improvement Act of 1982. Pub.L. No. 97–164, 96 Stat. 25.

### Discussion

In this action, plaintiffs allege fee ownership of Tract 1202 on the grounds that the deed description of Tract 1201, purchased by them in 1945, contained a meander line on the west boundary representing only the sinuosities of the Snake River and that the true boundary of the acquired land was not the meander line but rather the bank of mean high water mark of the river (and thus inclusive of the land designated as Tract 1202). This being the case, the money was paid in error to the State of Idaho instead of to themselves as the legitimate fee owners of Tract 1202.

The defendant counters this claim by arguing two points. First, the Government argues that the plaintiffs are bound under the doctrine of *res judicata* by the district

court judgment awarding compensation to the State of Idaho for the taking of Tract 1202 since plaintiffs had both actual and constructive notice of the taking but failed to intervene in the proceeding to condemn Tract 1202. Second, it argues on the merits of the ownership issue that the 1945 deed to Tract 1201 only speaks to 3.28 acres and not to some 6 acres that would be owned if Tracts 1201 and 1202 were lumped together. Thus, the Government asserts that the plaintiffs are not the owners of Tract 1202.

### A. *Res Judicata* Issue

Taking by real estate condemnation is an *in rem* action whereby title to the condemned property passes to the United States upon the filing of a Declaration of Taking and deposit of compensation in a court of competent jurisdiction. *See* 40 U.S.C. § 258a (1982); *United States v. Dow*, 357 U.S. 17, 21, 78 S.Ct. 1039, 1044, 2 L.Ed.2d 1109 (1958); *N.A. Corp. of Washington v. United States*, 5 Cl.Ct. 52, 56–57 (1984). "Since an eminent domain proceeding is *in rem*, there are no indispensable parties. The failure to join a party will not defeat the condemnor's title to the land, though the party will retain his right to compensation." *United States v. 416.81 Acres of Land*, 525 F.2d 450, 452 (7th Cir. 1975). Where a necessary party has not been joined, such "omitted party" may bring suit in the Claims Court for just compensation under the Tucker Act, 28 U.S.C. § 1491 (1982). *United States v. 88.-28 Acres of Land*, 608 F.2d 708, 715 (7th Cir.1979). If, however, one has been made a party to the condemnation proceeding, and yet failed to participate, one cannot claim the status of an "omitted party" and seek just compensation under the Tucker Act. Under the doctrine of *res judicata*, a final decision on the merits of a claim bars a subsequent action on that same claim or any part thereof, including issues which were not but could have been raised as part of the claim. *Roberson Lumber Co. v. United States*, 4 Cl.Ct. 436, 438 (1984). Once made a party to a condemnation action, one is necessarily bound by the decision. *Bullen v. DeBrettville*, 239 F.2d 824,

829 (9th Cir.1956), *cert. denied sub nom. Treasure Co. v. Bullen*, 353 U.S. 947, 77 S.Ct. 825, 1 L.Ed.2d 856 (1957).

In eminent domain proceedings, due process requires that interested parties be afforded notice of the taking. 1 Nichols on Eminent Domain § 4.103 (3d ed. 1981). The specific requirements for such notice are governed by the Federal Rules of Civil Procedure. Rule 71A(c)(2) requires that the Government join as defendants upon the commencement of a condemnation action:

> [O]nly the persons having or claiming an interest in the property whose names are then known, but prior to any hearing involving the compensation to be paid for a piece of property, *the plaintiff shall add as defendants all persons having or claiming an interest in that property* whose names can be ascertained by a reasonably diligent search of the records, considering the character and value of the property involved and the interests to be acquired, *and also those whose names have otherwise been learned.* All others may be made defendants under the designation "Unknown Owners." [Emphasis added.]

Thus, the rule provides that an "Unknown Owner" may be made a defendant, *i.e.*, a *party* to the condemnation action. And once made a party to an action, one becomes susceptible to the defense of *res judicata* in a later proceeding.

The provisions of Rule 71A have as their ultimate goal the protection of the due process rights of parties with interests in land.

In *Walker v. Hutchinson City*, 352 U.S. 112, 115–16, 77 S.Ct. 200, 202, 1 L.Ed.2d 178 (1956), the Supreme Court stated:

> It cannot be disputed that due process requires that an owner whose property is taken for public use must be given a hearing in determining just compensation. The right to a hearing is meaningless without notice. In *Mullane v. Central Hanover Bank & Trust Co.*, 339 U.S. 306 [70 S.Ct. 652, 94 L.Ed. 865] we

gave thorough consideration to the problem of adequate notice under the Due Process Clause. That case establishes the rule that, if feasible, notice must be reasonably calculated to inform parties of proceedings which may directly and adversely affect their legally protected interests. We there called attention to the impossibility of setting up a rigid formula as to the kind of notice that must be given; notice required will vary with circumstances and conditions. We recognized that in some cases it might not be reasonably possible to give personal notice, for example where people are missing or unknown.

Measured by the principles stated in the *Mullane* case, we think that the notice by publication here falls short of the requirements of due process. It is common knowledge that mere newspaper publication rarely informs a landowner of proceedings against his property. In *Mullane* we pointed out many of the infirmities of such notice and emphasized the advantage of some kind of personal notice to interested parties. In the present case, there seem to be no compelling or even persuasive reasons why such direct notice cannot be given. Appellant's name was known to the city and was on the official records. Even a letter would have apprised him that his property was about to be taken and that he must appear if he wanted to be heard as to its value. [Footnotes omitted.]

*See also Schroeder v. City of New York,* 371 U.S. 208, 83 S.Ct. 279, 9 L.Ed.2d 255 (1962).

With the above authorities in mind, the Court can now turn to the defendant's arguments in support of its contention that *res judicata* bars the plaintiffs' claim in this action. The Government basically has two strings in its violin. First, it contends that Rule 71A(c)(2) of the Federal Rules of Civil Procedure imposes no affirmative duty on it, under the facts of this case, to have named the plaintiffs as party defendants in the district court condemnation action and provided them with personal service and notice of the action. Second, the Government maintains that it was the plaintiffs that had a duty to intervene in the 1202 condemnation action because they had actual or constructive notice of the condemnation proceeding. As earlier indicated, the Government does not prevail on either line of reasoning.

(1) Government Duty of Notice.

The Government contends that it had no affirmative duty to provide notice of the condemnation action in the Tract 1202 proceedings because the plaintiffs did not appear on any records maintained by the State of Idaho (or subdivisions thereof) to be the record owners of Tract 1202. The Government points specifically to the fact that the plaintiffs were not carried on the tax assessor's rolls as record owners, and to the fact that the certificate of title specifically listed only the State of Idaho as the fee owner of record. The Government also points out that the exception listed in Schedule B of the title certificate which details the plaintiffs' potential fee title interest in the tract gained through accretion does not appear of record and "is couched in language which is clearly less than certain." While the Government thereafter concedes that it might have been "prudent practice" to have brought the plaintiffs into the proceedings "so that the District Court having original jurisdiction over questions ·of title and right to compensation could have resolved this issue with finality and the present litigation have been avoided," they nevertheless assert that the Government, under the factual circumstances here present, was not required to do so.

The basic problem with the defendant's contention, however, is that it does not square with the language of Rule 71A(c)(2). The Rule puts an affirmative duty on the Government to personally notify those parties:

> [H]aving or claiming an interest in the property whose names are then known, but prior to any hearing involving the compensation to be paid for a piece of property, *the plaintiff shall add as defendants all persons having or claim-*

*ing an interest in that property* whose names can be ascertained by a reasonably diligent search of the records, considering the character and value of the property involved and the interests to be acquired, *and also those whose names have otherwise been learned.* All others may be made defendants under the designation "Unknown Owners." [Emphasis added.]

The Rule specifically does not say that the Government has to notice only those that are record owners, or only those whose interests are certain.

█ Since the Government was aware of the interest of the Housers in the property by the notice provided in Schedule B of its own title certificate, it could not ignore that interest when filing the condemnation complaint. The plaintiffs were clearly not unknown owners. This is not a case where the Government did not know who these people were or where they were located. The Government was negotiating with these very same people on other tracts of land condemned for this same project. The Housers were well known people to the Government. Under these factual circumstances, the Government was under an affirmative duty to notify the plaintiffs in the Tract 1202 proceeding.

### (2) Plaintiffs' Actual or Constructive Notice.

The Government contends that even if they were under a duty to notice these plaintiffs, *res judicata* should still bar this subsequent action because the plaintiffs themselves had actual notice of the condemnation proceedings and should have intervened in the action to preserve their interests. Although the Government may be correct as to their legal theory, the facts they point to in support of that theory are lacking to indicate that plaintiffs knew *when* the 1202 condemnation action would occur. The Government points to four circumstances which, in their view, confirm that the plaintiffs had actual or constructive notice of the condemnation action, pri-

or to when it occurred on December 18, 1972.

First, the Government states that it gave two segment maps to the Housers of the various tracts that were to be condemned for the project. One of the maps detailed the tracts of land that were to be taken some six miles north of Lewiston. The Housers owned a 67-acre orchard (Tract 1000) on the Snake River which was condemned for this same project in June of 1971. The segment map did not detail the Tract 1202 property but did have a small insert that showed real estate was to be taken along a considerable distance of the Snake River including along the banks of the river in the City of Lewiston. The second segment map (Segment 12) included in detail both the 1201 and 1202 tracts and had a small insert chart that showed the owners of record of the tracts. This map was apparently given to one of the Housers in July 1972. Because the Corps of Engineers gave the Housers these two segment maps prior to the condemnation action in 1202, the Government maintains that the plaintiffs should have been alerted to the fact that Tract 1202 was going to be taken for the project. The Government's argument, however, misses the critical point of notice. It is not enough to have been alerted to the fact that someday, sometime your property is to be condemned. The maps did not provide the plaintiffs with the essential ingredient—*i.e.*, notice that their specific property was to be condemned at a certain place and time. Receipt of the segment maps did not provide the plaintiffs with actual or constructive notice of the condemnation action.

Next, the Government argues that the Corps of Engineers and the Housers held several meetings, at least one of which was on the grounds of Tract 1201, the boundaries of which had been staked. From these meetings, the Government asserts that it is inconceivable that the plaintiffs (together with the maps above discussed) would not be alerted to the fact of the impending condemnation. It is interesting to note, in connection with these meetings, that nowhere does the Government assert

that Government officials directly discussed Tract 1202 ownership with the plaintiffs. The subject of the meetings (and the reason the maps were given) was always to discuss ownership and damages of *other* tracts of land. The focus of the meetings was never on Tract 1202. Thus, the meetings do not provide support to the Government's theory that the plaintiffs had actual or constructive notice.

Third, the Government points to the deposition of Mr. Stanley LaFrenz, who owned and operated the Lewiston Pre-Mix Concrete plant on the Housers' 1201 tract. In his deposition, Mr. LaFrenz admits that he knew that the Government considered the State of Idaho to be the owner of Tract 1202, prior to the condemnation suit. Apparently, Mr. LaFrenz, who was a long-term lessee of the Housers on Tract 1201, was alerted to the Government's position when the Corps of Engineers' employees would periodically show up to stake and do other surveying chores on the property and would discuss various matters with him. The Government argues that Mr. LaFrenz's knowledge undoubtedly was conveyed to the Housers because he was their lessee. Apart from the fact that the Government's assertion is mere speculation with no factual support, the allegation even if true, again is not sufficient to shift the burden to the plaintiffs. Plaintiffs simply did not gain actual or constructive knowledge of the condemnation of Tract 1202 through Mr. LaFrenz's knowledge of the Government's ownership position regarding Tract 1202. Mr. LaFrenz did not know *when* the Government was going to condemn the property any more than the plaintiffs did.

Finally, the Government points to the numerous newspaper articles appearing in the local press to argue that the plaintiffs were alerted to the condemnation process. Although this Court has gone through each such newspaper article submitted by the Government, not one article describes the plaintiffs' Tract 1202 property nor the more important fact that a condemnation action will start on a date certain or has started with regard to that specific property. Newspaper publicity that describes upcoming events in generalities lacks the specificity required by this Court to hold that the plaintiffs had actual or constructive knowledge of this condemnation action.

■ From the record, it is clear that the Housers did know or should have known that Tract 1202 was likely to be condemned in the not too distant future. However, none of the defendant's arguments convince this Court that the Housers did know or should have known when this condemnation actually would commence or actually did commence. The purpose of Rule 71A is to put an affirmative duty on the Government to notice those parties that have an interest in the land that it knows about, so that those parties may show up in district court at a specified time and place to defend their interests. Neither the law nor the Rule requires persons with interests in land to camp on the courthouse steps to await a condemnation action or be forever foreclosed.

The Government's actions in this case are surprising because they not only contradict Rule 71A, but also the Government's own practice in similar cases. For example, in *United States v. 88.28 Acres of Land, More or Less*, 608 F.2d 708 (7th Cir.1979), the Government filed a complaint in condemnation to acquire land for the Indiana Dunes National Lakeshore. When it sought to condemn the land, the Government found the title clouded by conflicting claims to the fee by two sets of parties. The Government maintained that the public land records showed the fee in one party, Edward Warner, by virtue of a tax deed. However, a title insurance company had issued a preliminary report indicating that an opposing group, the heirs of Frederick Crumpacker, were the owners of individual interests in the land subject to several *reservations*, including the tax deed to Warner. Therefore, the Government named both parties in its complaint in an attempt to join all possible holders of any interest. There is no good reason, in light of the Government's previous practice, why the

Housers were not joined so that their possible interest in Tract 1202 could have been finally determined in the district court.

All the information presented by the Government to show the Housers' actual or constructive knowledge of Tract 1202 condemnation only strengthens this Court's conclusion that the Government was aware of the Housers' interest in Tract 1202. Through the examination of maps and acquisition tract registers as well as discussion with the Housers, the Government would have known that as owners of Tract 1201, they had a potential interest in Tract 1202 as land gained by accretion. As plaintiff, the Government obviously knew about and had control over the commencement of the lawsuit to condemn Tract 1202. Nevertheless, they inadvertently or deliberately chose not to join the Housers as defendants. The Housers, on the other hand, may have been aware of the probability that Tract 1202 would be condemned, but were unlikely to find out about the commencement of the proceeding unless directly notified.

The Court finds that the Government was aware of plaintiffs' interest in Tract 1202 and therefore had an affirmative *duty* under Rule 71A(c)(2) to personally serve them with notice rather than rely on published notice to unknown owners. Not being afforded due process, the plaintiffs are not bound by the decision in the 1972 condemnation action by the doctrine of *res judicata*. The plaintiffs, therefore, have a right to maintain an action in this Court that seeks to prove their ownership of the condemned real estate.

### B.  Ownership Issue

All parties to this action have moved for summary judgment as to the issue of ownership. All have indicated that there are no material facts in dispute and thus judgment as to ownership should be entered by the Court as a matter of law. All parties have supported their respective positions with pleadings, depositions, affidavits and all have signed on to a Stipulation of Facts with attached documents. Unfortunately, however, the respective positions argued for by the parties convince this Court that there are material questions of fact still open that are not answered by the parties' submissions.

Summary judgment is appropriate where no material facts are in dispute and judgment may be had as a matter of law. R.U. S.C.C. 56(c); *South Louisiana Grain Services, Inc. v. United States*, 1 Cl.Ct. 281, 289 (1982). However, special care must be exercised in awarding summary judgment in eminent domain cases. *Yuba Goldfields, Inc. v. United States*, 723 F.2d 884, 891 (Fed.Cir.1983).

From the evidence submitted, it appears as if the Government has the better of the argument that the plaintiffs do not own Tract 1202. This appears to be the case from reviewing the chain of title documents which show that the plaintiffs gained title to Tract 1201 from the successors in interest to Mr. William Cox in 1899. Although the chain of title documents are far from easy to read, it would appear that Mrs. Sanford took less than the entire 6 acres that Mr. Cox's administrator was trying to sell. If this is the case, then the *meander* line western boundary contained in the deed to Mrs. Sanford would become a fixed boundary rather than an elastic boundary designed to show the river's edge. *See Younie v. Sheek*, 44 Id. 767, 260 P. 419 (1927). Further, the question of whether Tract 1202 is land subject to or gained by accretion is confusing to the Court at this point. In any event, this Court could well benefit from expert testimony on the meander line point, as well as whether this land was subject to possible accretion.

Furthermore, even if this Court could decide this meander line point dispute at this stage of the proceeding, the Court would still be troubled by the question as to how the State of Idaho gained title to Tract 1202. There is absolutely nothing in the record on this point at all.

Finally, while the Government contends that the Housers paid no taxes on Tract 1202 and exercised no dominion over the tract, the evidence submitted (photographs)

**44**

make it quite clear that the Housers' lessee, the Lewiston Pre-Mix Concrete plant, was using large portions of Tract 1202 for storage of materials and vehicles which could possibly raise the issue of adverse possession—especially if the State of Idaho did not have title to this tract.

The disputed facts or concerns listed above are not intended to be comprehensive. They are listed only to indicate that this ownership matter is hardly free from factual and legal doubt and that this Court could benefit from further ventilation of the issue that a trial would provide.

In view of the above, the Court hereby denies the parties' motions for summary judgment on the issue of the Housers' ownership of Tract 1202.

### CONCLUSION

For the reasons stated above, the parties' cross-motions for summary judgment on the issue of ownership are denied without prejudice. Likewise, the defendant's motion for summary judgment on the issue of *res judicata* is also denied.

A status conference is hereby scheduled for Thursday, October 31, 1985, at 2 p.m. in the National Courts Building, 717 Madison Place, N.W., Washington, D.C., in order to discuss the parties' intention with regard to further proceedings in this case. Although this Court does arrange for telephonic conferences, in view of the age and the document-intensive nature of this case, all parties are urged to attend the conference in person.