## CALIFORNIA *v.* ARIZONA ET AL.

No. 78, Orig.   Argued January 9, 1979—Decided February 22, 1979

STEWART, J., delivered the opinion for a unanimous Court.

*Allan J. Goodman,* Deputy Attorney General of California, argued the cause for plaintiff.   On the motion for leave to file a complaint were *Evelle J. Younger,* Attorney General, *N. Gregory Taylor,* Assistant Attorney General, and *Russell Iungerich,* Deputy Attorney General, and on the reply to the brief in opposition and response to the motion were *Messrs. Younger, Taylor,* and *Goodman.*

*Russell A. Kolsrud,* Assistant Attorney General, argued the cause for defendant State of Arizona.   With him on the briefs were *John A. LaSota, Jr.,* Attorney General, and *Anthony B. Ching,* Assistant Attorney General.

*Louis F. Claiborne* argued the cause for the United States. On the response to the motion was *Solicitor General McCree.*

Mr. Justice Stewart delivered the opinion of the Court.

Since the admission of California to the Union in 1850, the southeastern boundary of the State has been the middle of the channel of the Colorado River. Act of Sept. 9, 1850, 9 Stat 452. Neither the Gadsden Purchase in 1853 nor the admission of Arizona to statehood in 1912 changed the location of this 229-mile border. The location of the river did change, however, from causes both natural and artificial. These shifts created confusion about the location of the political boundary between California and Arizona. This problem was resolved through an interstate compact, ratified by the Congress in 1966.[1] The Compact fixed the boundary by stations of longitude and latitude, divorced from the continuing shifts of the Colorado River.

California has taken the position, however, that the Compact settled only questions of political jurisdiction, not questions of ownership of real property, since, under the "equal-footing doctrine," California holds title to all lands beneath the navigable waters within its boundaries at the time of its admission to the Union. *Pollard's Lessee* v. *Hagan,* 3 How. 212, 219. See *Oregon ex rel. State Land Bd.* v. *Corvallis Sand & Gravel Co.,* 429 U. S. 363. In the early 1970's the California State Lands Commission made a study of a stretch of 11.3 miles along the river to determine what land California owns. Both Arizona and the United States have a direct interest in such a determination. Arizona, of course, has the same rights under the equal-footing doctrine as does California. The United States is the principal riparian owner in this region, and determination of the width and location of the old riverbed thus will necessarily affect its

---

[1] Interstate Compact Defining the Boundary Between the States of Arizona and California, 80 Stat. 340.

property interests. California has presented the determinations of its Lands Commission to both Arizona and the United States; neither has acquiesced in the Commission's conclusions.

California seeks to invoke the Court's original jurisdiction in this suit to quiet title to the lands it claims, and thus resolve its dispute with Arizona and the United States.[2] To sue Arizona, it relies on 28 U. S. C. § 1251 (a), which confers on this Court "original and exclusive jurisdiction of . . . [a]ll controversies between two or more States." To sue the United States, it relies on 28 U. S. C. § 1251 (b), which confers on this Court "original but not exclusive jurisdiction of . . . [a]ll controversies between the United States and a State." Both these heads of original jurisdiction find their source in Art. III, § 2, of the Constitution: "In all Cases . . . in which a State shall be Party, the supreme Court shall have original Jurisdiction."

It is undisputed that both Arizona and the United States are indispensable parties to this litigation, and it is California's need to sue both Arizona and the United States that creates the problem before us. Specifically, Arizona and the United States contend that the United States has not agreed to be a defendant in a quiet-title action in this Court  Yet this is the only federal court in which California can sue Arizona, because Congress has conferred upon it "original and *exclusive* jurisdiction" (emphasis added) over controversies between States. 28 U. S. C. § 1251 (a)(1).

It is settled that the United States must give its consent to be sued even when one of the States invokes this Court's original jurisdiction:

"It does not follow that because a State may be sued by the United States without its consent, therefore the

---

[2] California points out that other title questions may arise along the entire stretch of the California-Arizona border. It urges the Court to retain jurisdiction of this case for adjudication of these potential additional controversies. We leave that suggestion for a later date.

United States may be sued by a State without its consent. Public policy forbids that conclusion." *Kansas* v. *United States,* 204 U. S. 331, 342.

See *Oregon* v. *Hitchcock,* 202 U. S. 60; *Minnesota* v. *Hitchcock,* 185 U. S. 373, 387 (dicta). But cf. *United States* v. *Texas,* 143 U. S. 621. Yet the Court has recognized that an action in equity cannot be maintained without the joinder of indispensable parties.[3] *Shields* v. *Barrow,* 17 How. 130; *Mallow* v. *Hinde,* 12 Wheat. 193. Thus, if the United States has not consented to be sued in an action such as this, California's motion for leave to file a complaint must be denied. "A bill of complaint will not be entertained which, if filed, could only be dismissed because of the absence of the United States as a party." *Arizona* v. *California,* 298 U. S.

---

[3] Federal Rule Civ. Proc. 19 (a) provides that a person is to be joined in an action if

"(1) in his absence complete relief cannot be accorded among those already parties, or (2) he claims an interest relating to the subject of the action and is so situated that the disposition of the action in his absence may (i) as a practical matter impair or impede his ability to protect that interest or (ii) leave any of the persons already parties subject to a substantial risk of incurring double, multiple, or otherwise inconsistent obligations by reason of his claimed interest."

Rule 19 (b) provides that when a person described by Rule 19 (a) cannot be joined, "the court shall determine whether in equity and good conscience the action should proceed among the parties before it, or should be dismissed, the absent person being thus regarded as indispensable."

Rule 9 (2) of this Court provides:

"The form of pleadings and motions in original actions shall be governed, so far as may be, by the Federal Rules of Civil Procedure, and in other respects those rules, where their application is appropriate, may be taken as a guide to procedure in original actions in this court."

This Court has dismissed cases in its original jurisdiction for want of an indispensable party, *Arizona* v. *California,* 298 U. S. 558, 572; *California* v. *Southern Pacific Co.,* 157 U. S. 229, 256. Here, all three parties have agreed that their interests in the land in question are inextricably linked.

558, 572. See *Texas* v. *New Mexico,* 352 U. S. 991; but see *Florida* v. *Georgia,* 17 How. 478, 494–496 (Taney, C. J.).

The suit, then, could not be maintained in any court. This Court could not hear the claims against the United States because it has not waived its sovereign immunity, and a district court could not hear the claims against Arizona, because this Court has exclusive jurisdiction over such claims. To resolve this asserted dilemma, the Solicitor General has made an undertaking on behalf of the United States. He has agreed that, if California is granted leave to file its complaint in this Court against Arizona, the United States will intervene with respect to the controversy over part of the area in question.[4] Because, however, we have concluded that the United States has already waived its sovereign immunity to suit in this case, we need not assess the wisdom or validity of the Solicitor General's suggestion.

In 1972 Congress passed Pub. L. 92–562, 86 Stat. 1176. The Act made two relevant changes in Title 28 of the United States Code.[5] First, it created a new § 2409a.[6] Subsection (a) of this new section provides:

"The United States may be named as a party defendant

---

[4] The Solicitor General maintains that the Government has a valid statute of limitations defense as to that part of this controversy that concerns the northern 2.7 miles of the 11.3-mile stretch of original riverbed in controversy. He has undertaken to intervene, therefore, only with respect to the remainder of the tract.

[5] The Act also included a venue provision, codified at 28 U. S. C. § 1402 (d).

[6] Title 28 U. S. C. § 2409a reads:

"(a) The United States may be named as a party defendant in a civil action under this section to adjudicate a disputed title to real property in which the United States claims an interest, other than a security interest or water rights. This section does not apply to trust or restricted Indian lands, nor does it apply to or affect actions which may be or could have been brought under sections 1346, 1347, 1491, or 2410 of this title, sections

in a civil action under this section to adjudicate a disputed title to real property in which the United States claims an interest, other than a security interest or water rights. . . ."

The remainder of the section defines the procedures to be followed in such suits. Second, the Congress amended 28 U. S. C. § 1346 to add a new subsection (f). That subsection provides:

"The district courts shall have exclusive original juris-

---

7424, 7425, or 7426 of the Internal Revenue Code of 1954, as amended . . . or section 208 of the Act of July 10, 1952 . . . .

"(b) The United States shall not be disturbed in possession or control of any real property involved in any action under this section pending a final judgment or decree, the conclusion of any appeal therefrom, and sixty days; and if the final determination shall be adverse to the United States, the United States nevertheless may retain such possession or control of the real property or of any part thereof as it may elect, upon payment to the person determined to be entitled thereto of an amount which upon such election the district court in the same action shall determine to be just compensation for such possession or control.

"(c) The complaint shall set forth with particularity the nature of the right, title, or interest which the plaintiff claims in the real property, the circumstances under which it was acquired, and the right, title, or interest claimed by the United States.

"(d) If the United States disclaims all interest in the real property or interest therein adverse to the plaintiff at any time prior to the actual commencement of the trial, which disclaimer is confirmed by order of the court, the jurisdiction of the district court shall cease unless it has jurisdiction of the civil action or suit on ground other than and independent of the authority conferred by section 1346 (f) of this title.

"(e) A civil action against the United States under this section shall be tried by the court without a jury.

"(f) Any civil action under this section shall be barred unless it is commenced within twelve years of the date upon which it accrued. Such action shall be deemed to have accrued on the date the plaintiff or his predecessor in interest knew or should have known of the claim of the United States.

"(g) Nothing in this section shall be construed to permit suits against the United States based upon adverse possession."

diction of civil actions under section 2409a to quiet title to an estate or interest in real property in which an interest is claimed by the United States."

It is thus clear that the United States has waived its immunity to suit in actions brought against it to quiet title to land. The question is whether suits brought under that waiver may be heard in this Court. The Solicitor General argues that they may not, that § 1346 (f) operates both to confer original jurisdiction over such a case on the federal district courts and simultaneously to withdraw the original jurisdiction of this Court. If this contention were accepted, a grave constitutional question would immediately arise. That question, quite simply, is whether Congress can deprive this Court of original jurisdiction conferred upon it by the Constitution.

The original jurisdiction of the Supreme Court is conferred not by the Congress but by the Constitution itself. This jurisdiction is self-executing, and needs no legislative implementation. *Kentucky* v. *Dennison,* 24 How. 66, 96; *Florida* v. *Georgia,* 17 How., at 492; *Martin* v. *Hunter's Lessee,* 1 Wheat. 304, 332. It is clear, of course, that Congress could refuse to waive the Nation's sovereign immunity in all cases or only in some cases but in all courts. Either action would bind this Court even in the exercise of its original jurisdiction. It is similarly clear that the original jurisdiction of this Court is not constitutionally exclusive—that other courts can be awarded concurrent jurisdiction by statute. *Börs* v. *Preston,* 111 U. S. 252; *Ames* v. *Kansas ex rel. Johnston,* 111 U. S. 449. But once Congress has waived the Nation's sovereign immunity, it is far from clear that it can withdraw the constitutional jurisdiction of this Court over such suits.

The constitutional grant to this Court of original jurisdiction is limited to cases involving the States and the envoys of foreign nations. The Framers seem to have been concerned

with matching the dignity of the parties to the status of the court:

> "The evident purpose [of the grant of original jurisdiction] was to open and keep open the highest court of the nation for the determination, in the first instance, of suits involving a State or a diplomatic or commercial representative of a foreign government. So much was due to the rank and dignity of those for whom the provision was made . . . ." *Id.*, at 464.

See The Federalist No. 81, pp. 507–509 (H. Lodge ed. 1888) (A. Hamilton). Elimination of this Court's original jurisdiction would require those sovereign parties to go to another court, in derogation of this constitutional purpose. Congress has broad powers over the jurisdiction of the federal courts and over the sovereign immunity of the United States but it is extremely doubtful that they include the power to limit in this manner the original jurisdiction conferred upon this Court by the Constitution.

Happily, we need not decide this constitutional question, for the statute in question can readily be construed in such a way as to obviate it. In so construing the statute, we no more than follow the long practice of the Court to forgo the resolution of constitutional issues except when absolutely necessary. "When the validity of an act of the Congress is drawn in question, and even if a serious doubt of constitutionality is raised, it is a cardinal principle that this Court will first ascertain whether a construction of the statute is fairly possible by which the question may be avoided." *Crowell* v. *Benson,* 285 U. S. 22, 62.

The legislative history of § 1346 (f) is sparse, but the intent of Congress seems reasonably clear. The congressional purpose was simply to confine jurisdiction to the federal courts and to exclude the courts of the States, which otherwise might be presumed to have jurisdiction over quiet-title suits against the United States, once its sovereign immunity had been

waived.  *Charles Dowd Box Co.* v. *Courtney,* 368 U. S. 502; *Claflin* v. *Houseman,* 93 U. S. 130, 136.[7]  The legislative history shows no intention to divest this Court of jurisdiction over quiet-title actions against the United States in cases otherwise within our original jurisdiction.  We find, therefore,

---

[7] This legislation resulted from a title dispute between the United States and landowners along the Snake River in Idaho.  In 1971 the Senators from Idaho introduced three bills in response to this dispute.  One of the bills, S. 216, waived the Government's immunity to suit in quiet-title actions.  As originally drafted, the bill would have created a new section, 28 U. S. C. § 2408a, providing:

"The United States may be named a party in any civil action brought by any person to quiet title to lands claimed by the United States."

Hearing before the Subcommittee on Public Lands of the Senate Committee on Interior and Insular Affairs on S. 216, 92d Cong., 1st Sess., 1 (1971).

At the hearing the administration opposed S. 216 but offered to propose an acceptable substitute.  The promised changes were set forth in a letter from the Attorney General to the Senate Committee in October 1971.  S. Rep. No. 92–575, pp. 5–7 (1971).  Most of the changes were concerned with the waiver section and now make up subsections (b) through (g) of § 2409a.  The administration also suggested a change in the bill's jurisdictional section.  Rather than simply confer "original jurisdiction" on the federal district courts to hear quiet-title actions against the United States, as the original bill had provided, the administration suggested that the bill confer upon the district courts *"exclusive* original jurisdiction" (emphasis added).  The Attorney General's letter explained the requested change as follows:

"Since we believe it is the better policy to litigate questions of the Government's title in the Federal courts, the draft bill provides for exclusive jurisdiction of suits under the statute in the U. S. district courts."  S. Rep. No. 92–575, *supra,* at 7.

The administration's suggestions were, for the most part, accepted.  There was no discussion of the jurisdictional section in the Report of either the House Committee, H. R. Rep. No. 92–1559 (1972), or the Senate Committee, *supra.*  Nor was that provision the subject of any debate on the floor of either House.  117 Cong. Rec. 46380–46381 (1971) (passage by the Senate); 118 Cong. Rec. 35530–35531 (1972) (passage by the House of Representatives); *id.,* at 35993 (concurrence by the Senate in the amendments made by the House).

that § 1346 (f), by vesting "exclusive original jurisdiction" of quiet-title actions against the United States in the federal district courts, did no more than assure that such jurisdiction was not conferred upon the courts of any State.

For these reasons we conclude that there is no bar to this original suit in the Supreme Court between California as plaintiff, and Arizona and the United States as defendants.[8] Accordingly, the motion of California for leave to file its complaint is granted, and the defendants are allowed 45 days in which to answer or otherwise respond.

*It is so ordered.*

---

[8] Arizona argues that this is not an appropriate case for this Court's original jurisdiction, both because of its factual complexity and because it involves only title to land rather than the location of a political boundary. Such considerations are hardly relevant to the exercise of this Court's original and exclusive jurisdiction, and the fact is that several cases decided by the Court under its original jurisdiction have involved complicated questions of title to land. In *Massachusetts* v. *New York,* 271 U. S. 65, for example, the Court decided that Massachusetts did not have title to lands within New York along and within Lake Ontario. In *Minnesota* v. *Hitchcock,* 185 U. S. 373, and *Wisconsin* v. *Lane,* 245 U. S. 427, the Court decided bills brought by States to quiet title against the United States. The Congress had expressly waived sovereign immunity for those suits. Cases in which the Court has entertained actions by the United States to quiet title to lands claimed by the States include *United States* v. *Utah,* 279 U. S. 816; *United States* v. *Oregon,* 282 U. S. 804; *United States* v. *Alabama,* 313 U. S. 274; *United States* v. *Wyoming,* 333 U. S. 834; *United States* v. *California,* 332 U. S. 19; *United States* v. *Louisiana,* 339 U. S. 699; and *United States* v. *Texas,* 339 U. S. 707.