**MANUFACTURERS NATIONAL BANK OF DETROIT, a National Banking Association, Plaintiff,**

v.

**BROWNSTOWN SQUARE APARTMENTS, a Michigan Limited Partnership, et al., Defendants.**

Civ. A. No. 8–71268.

United States District Court,
E. D. Michigan, S. D.

March 4, 1980.

Michael R. Main, Michael D. Boutell, Christian C. Nilson, Detroit, Mich., for plaintiff.

Samuel J. Behringer, Jr., Asst. U. S. Atty., Detroit, Mich., for Patricia Harris.

Edward F. Kickham, Lawrence D. McLaughlin, Detroit, Mich., for Mid-States Mortgage Corp.

Clunet R. Lewis, Ellen Christensen, Detroit, Mich., for Brownstown Square Apartments and Bernard and Leslie Schrott.

## MEMORANDUM OPINION

JULIAN ABELE COOK, Jr., District Judge.

This case has raised difficult questions regarding the Court's jurisdiction. The Court will begin by briefly outlining the relevant facts.

Brownstown wanted to build an apartment complex. It secured a loan from Midstate in the amount of $3.29 Million, with a mortgage securing the loan. The loan was federally insured. Additionally,

Midstate desired extra security regarding the initiation of the project because of an already existing operating deficit. Therefore, pursuant to HUD's regulations and instructions, Brownstown applied for a letter of credit to be used to by Midstate and to be drawn upon Manufacturers.

Brownstown later defaulted on the loan and Midstate assigned the mortgage to HUD, according to the HUD guarantee. Also, Midstate drew $71,827.00 (the entire amount) on the letter of credit. From the $3.29 Million due on the mortgage loan, Midstate deducted the $71,827.00 drawn on the letter of credit.

Manufacturers then sued Midstate (as well as Brownstown and others) for drawing upon the letter of credit in the Oakland County Circuit Court. Brownstown and the others cross-claimed against Midstate. Midstate then filed a Third Party Complaint against the Secretary of HUD alleging that HUD, as the mortgage insurer, it should be held liable to Midstate, in the event that Midstate was adjudged to be liable in any manner for drawing the letter of credit.

The case was then removed to this Court by Petition of the Secretary of HUD pursuant to 28 U.S.C. § 1442(a)(1) because the Secretary, a federal official, was being sued in her official capacity.

■ It is my judgment that this Court has the requisite authority to determine if it has the jurisdiction over the substantive issues of this lawsuit.[1]

Jurisdiction over the Secretary was predicated upon 12 U.S.C. § 1702 in the Third Party Complaint. The Secretary, after removal under 28 U.S.C. § 1442(a)(1), now alleges that 12 U.S.C. § 1702 does not operate as a jurisdictional statute. Additionally, she argues that this matter is a suit against the United States, sounding in contract, and therefore, exclusive jurisdiction over the instant case is in the United States Court of Claims under the Tucker Act. To buttress this argument, she points out that there is concurrent jurisdiction in the Court of Claims and the District Court only if a contract action involves an amount in controversy of $10,000.00 or less, 28 U.S.C. § 1346(a)(2).

The initial jurisdictional inquiry must center around the effect that a removal under 28 U.S.C. § 1442 would have upon this Court's subject matter jurisdiction.

Most removal statutes, e. g., 28 U.S.C. § 1441, require the Court to determine if it would have jurisdiction over the lawsuit had it been brought originally in the District Court. In a sense, these removal statutes do not vest the District Court with subject matter jurisdiction. There must be an independent inquiry to decide if the action could have been originally filed in the District Court. 28 U.S.C. § 1442(a)(1), however, operates somewhat differently. This result follows primarily from the strong Congressional desire, embodied in the statute, to have federal courts adjudicate disputes involving federal officials.

> [T]he right of removal under § 1442(a)(1) is made absolute whenever suit in state court is for any act "under color" of federal office, regardless of whether the suit could have originally been brought in a federal court.

*Willingham v. Morgan*, 395 U.S. 402, 406, 89 S.Ct. 1813, 1816, 23 L.Ed.2d 396 (1969).

■ More specifically, the teaching of *Willingham* has been applied to actions which are similar to this one by the Eighth Circuit. After agreeing with the District Court that 12 U.S.C. § 1702 was not a jurisdictional grant, the Court of Appeals went on to conclude that 28 U.S.C. § 1442(a)(1), of its own force, would vest the District Court with subject matter jurisdiction.

> We do not think that Section 1442(a)(1) contemplates a procedure whereby the Secretary can remove a case from a state court of competent jurisdiction and subsequently obtain dismissal on the basis that

---

1. *United States v. United Mine Workers*, 330 U.S. 258, 292–93 & n. 57, 67 S.Ct. 677, 695 & n. 57, 91 L.Ed. 884 (1947); *Marshall v. Local Un-* *ion No. 639*, 539 F.2d 1297, 1301 & n. 16 (D.C. Cir.1979).

the federal court to which removal is effected is not a court of competent jurisdiction.

*Bor-Son Bldg. Corp. v. Heller*, 572 F.2d 174, 181–82 (8th Cir. 1978). *See also* 1A J. Moore, *Moore's Federal Practice* ¶ 0.164[2], at 323 & n. 40 (1979).[2]

In view of this authority, it is unnecessary for the Court to address the otherwise difficult question of whether this Court would have original jurisdiction over

2. It is important to note that the Oakland County Circuit Court was a court of competent jurisdiction. There is no jurisdictional bar to suing a federal official in state court. *Colorado v. Symes*, 286 U.S. 510, 517–18, 52 S.Ct. 635, 637, 76 L.Ed. 1253 (1932); *Northern Pacific Ry. v. North Dakota*, 250 U.S. 135, 39 S.Ct. 502, 63 L.Ed. 897 (1919); 1 J. *Moore's Federal Practice* § 0.65 [2.–1], at 700.89 n. 4 (1979).

3. *Spec. Pros of N.Y. v. United States Atty. for S.D.N.Y.*, 375 F.Supp. 797, 801 (S.D.N.Y.1974).

4. The Secretary has made the argument that the Court of Claims has exclusive jurisdiction over the United States in a contract action involving an amount in controversy exceeding $10,000.00 under the Tucker Act, 28 U.S.C. § 1346(a). As some courts have pointed out, this "exclusive jurisdiction" argument misperceives the difference between subject matter jurisdiction and sovereign immunity. Unlike the exclusive vesting of subject matter jurisdiction in the District Court for claims against the Government sounding in tort under the Federal Tort Claims Act, 28 U.S.C. § 1491 merely grants the Court of Claims jurisdiction over the type of claims specified in the Tucker Act. Practically, litigants, to pursue claims in contract for over $10,000.00, who go to the District Court cannot find a waiver of sovereign immunity. This defect has lead many to the misleading conclusion that jurisdiction is "exclusively" in the Court of Claims for such actions. *Bor-Son Bldg. Corp. v. Heller*, 572 F.2d at 182 n. 14; *Ghent v. Lynn*, 392 F.Supp. 879, 881 (D.Conn. 1975).

The Court has considered the possibility of transferring this matter to the United States Court of Claims pursuant to 28 U.S.C. § 1406(c) which provides:

If a case with the exclusive jurisdiction of the Court of Claims is filed in a district court, the district court shall, if it be in the interest of justice, transfer such case to the Court of Claims where the case shall proceed as if it had been filed in the Court of Claims on the date it was filed in the District Court.

The Court reads the term "exclusive jurisdiction", as used in the statute, of the Court of

the matter.[3] § 1442 jurisdiction is not derivative and, therefore, such questions are not before the Court.[4]

Having concluded that this Court has subject matter jurisdiction by virtue of the § 1442 removal, the Court still must resolve whether there has been a waiver of sovereign immunity by the United States concerning such a suit. Inquiries into whether Congress has waived sovereign immunity and whether it has bestowed subject matter jurisdiction upon a lower federal court are

Claims in a broader sense than that which applies to the strict analysis of the Court of Claims subject matter jurisdiction discussed above. In this regard, the Court believes a transfer to the Court of Claims would be appropriate if sovereign immunity was a jurisdictional defect to a suit in District Court and if such immunity would be waived under the Tucker Act to a claim brought in the Court of Claims.

A transfer here might effectuate two Congressional purposes that otherwise might be at odds. A transfer to the Court of Claims of a contract case involving a dispute over $10,-000.00 (such as this one), would implement the Congressional desire for such matters to be litigated in the Court of Claims (as evidenced by waiver of sovereign immunity in that court regarding such claims). Additionally, it would provide the Secretary with a federal forum, effectuating, at least in part, the strong Congressional desire to have disputes involving federal officials litigated in the federal forum.

Unfortunately, this transfer is not feasible. 28 U.S.C. § 1491 has been interpreted by the Supreme Court as not bestowing jurisdiction upon the Court of Claims to adjudicate disputes between private parties. The Court must ignore such private disputes if litigation regarding a claim against the United States involves them. Moreover, if it is necessary to determine the liability of the private parties in order to ascertain the liability of the United States, the Court of Claims has no jurisdiction to hear any of the case. *United States v. Sherwood*, 312 U.S. 584, 61 S.Ct. 767, 85 L.Ed. 1058 (1941). Consequently, a transfer to the United States Court of Claims would be a transfer to a court that would have no subject matter jurisdiction over this lawsuit; the liability of the United States in this case is wholly contingent upon a finding that Midstate is liable to Manufacturers on the letter of credit.

There being no subject matter jurisdictional bar to this lawsuit being prosecuted here, the Court must turn to the most serious contention of the Secretary; namely, whether there is a waiver of sovereign immunity.

fundamentally different inquiries,[5] even though both relate to jurisdictional defects in that they affect the competency of the court to adjudge the given dispute.[6]

If Congress has waived the immunity of the suit, then the case is properly before this Court. However, if Congress has not waived immunity, this Court, powerless to keep the Secretary as a Third Party Defendant, would be required to dismiss her under Fed.R.Civ.P. 12(b)(1). If there has been no waiver of immunity and because the presence of the Secretary, by virtue of the § 1442 removal, was the only possible predicate to the case being in federal court, the matter would have to be remanded to the state court.

█ It is contended that 12 U.S.C. § 1702, permitting the Secretary to sue and be sued,[7] waives the immunity of the United States in this case. In *F.H.A. v. Burr*, 309 U.S. 242, 60 S.Ct. 488, 84 L.Ed. 724 (1940), the Court held that the predecessor statute of 12 U.S.C. § 1702 waived sovereign immunity and subjected the Administrator to garnishment proceedings. Although waivers of sovereign immunity are usually strictly construed,[8] the *Burr* Court indicated that, when Congress permits an agency "to sue or be sued," such a waiver should be liberally construed. The Court felt that, when Congress launched a governmental agency into the commercial world, it is not any less amenable to judicial process than a private enterprise under like circumstances.[9]

Nevertheless, the *Burr* Court has pointed out that there were limits to such an expansive approach to a waiver of sovereign immunity. When Treasury funds, rather than agency funds, are affected, there is no waiver because the United States had not consented to being sued *eo nomine*.[10]

Consequently, the inquiry regarding sovereign immunity waiver is reduced to whether a judgment in favor of the Third Party Plaintiff, Midstate, and against the Third Party Defendant, Secretary, would have to be satisfied out of those Treasury funds in control of the Secretary.[11]

█ The Secretary asserts that there are no funds under her control from which a

**5.** *See, e. g., National Treas. Emp. Un. v. Campbell*, 589 F.2d 669, 673 & nn. 6–7 (D.C.Cir. 1979).

**6.** *Id. See, e. g., also California v. Arizona*, 440 U.S. 59, 65, 99 S.Ct. 919, 923, 59 L.Ed.2d 144 (1979).

**7.** The relevant portion of 1702 provides:
The Secretary shall, in carrying out the provisions of this subchapter and subchapters II, III, V, VI, VII, X, IX–A, and IX–B, or this chapter, *be authorized to sue and be sued in any court of competent jurisdiction, state or federal.* 12 U.S.C. § 1702 (emphasis supplied).

**8.** *See, e. g., United States v. Testan*, 424 U.S. 392, 399, 96 S.Ct. 948, 953, 47 L.Ed.2d 114 (1976).

**9.** This policy is in line with the current disfavor of the doctrine of governmental immunity from suit, as evidenced by the increasing tendency of Congress to waive immunity where federal governmental corporations are concerned. *Keifer & Keifer v. Reconstruction Finance Corp.*, 306 U.S. 381, 59 S.Ct. 516, 83 L.Ed. 784 (1939). Hence, when Congress establishes such an agency, authorizes it to engage in commercial and business transactions with the public, and permits it to "sue and be sued," it cannot be lightly assumed that restrictions on that authority are to be implied. Rather if the general authority to "sue and be sued" is to be delimited by implied exceptions, it must be clearly shown that certain types of suits are not consistent with the statutory or constitutional scheme, that an implied restriction of the general authority is necessary to avoid grave interference with the performance of a governmental function, or that for other reasons it was plainly the purpose of Congress to use the "sue and be sued" clause in a narrow sense. In the absence of such showing, it must be presumed that when Congress launched a governmental agency into the commercial world and endowed it with authority to "sue and be sued," that agency is not less amenable to judicial process that a private enterprise under like circumstances would be. *F.H.A. v. Burr*, 309 U.S. at 245, 60 S.Ct. at 490. *See also Bor-Son Bldg. Corp. v. Heller*, 572 F.2d 174, 179 (8th Cir. 1978).

**10.** *F.H.A. v. Burr*, 309 U.S. at 250–51, 60 S.Ct. at 492–93. *See also, Marcus Garvey Square v. Winston Burnett*, 595 F.2d 1126, 1131 (9th Cir. 1979).

**11.** *Marcus Garvey Square v. Winston Burnett*, 595 F.2d at 1131.

judgment could be satisfied. However, this overlooks a very important factual aspect of this case in that when Midstate drew upon the letter of credit, it reduced the amount drawn, $71,827.00, from the original amount due and owing, $3.29 Million, on the loan that H.U.D. assumed. Consequently, it would appear to the Court that, to the extent the sum of the amount due and owing on the loan either added to the amount of any judgment or does not exceed $3.29 Million in the Third Party Complaint there are sums under the control of the Secretary with which to satisfy any judgment. Additionally, there is no sovereign immunity problem.

The letter of credit was obtained with the approval of the Secretary and, in this regard, it is obvious that she and her agency were enmeshed in commercial world transactions. In this respect, the rationale of *F.H.A. v. Burr*, clearly applies to this case.

The Motions of the Secretary to Dismiss and/or to Transfer to an appropriate forum is thereby denied.