**Robert BILY, Plaintiff,**

**v.**

**ILLINOIS CENTRAL GULF RAILROAD CO., United Telecom Communications, Inc., MCI Telecommunications Corp., GTE Sprint Communications Corp., Andrew Systems, Inc., Jerry Porterfield Construction Co., and Metropolitan Sanitary District of Greater Chicago, Defendants.**

**No. 85 C 4184.**

United States District Court, N.D. Illinois, E.D.

June 12, 1986.

Bernard Wiczer, Wisczer & Assoc., Chicago, Ill., for plaintiff.

Edna Epstein, Sidley & Austin, Chicago, Ill., for ICG.

Robert F. Ward, Laura DiGiantonio, Chadwell & Kayser, Chicago, Ill., for GTE Sprint.

Michael W. Ward, Thomas A. Grimaldi, O'Keefe, Ashendon, Lyons & Ward, Chicago, Ill., for U.S. Telecom.

Raymond Belstner, ICG, Chicago, Ill., for defendants.

## MEMORANDUM OPINION

WILL, District Judge.

This is an action to compel specific performance of a contract for the sale of real estate. Two of the original defendants—the United States of America and Andrew Systems, Inc.—were dismissed after they disclaimed any interest in the subject property. Several of the remaining defendants now move under Rule 12(b)(1) of the Federal Rules of Civil Procedure to dismiss for lack of subject-matter jurisdiction. For the reasons stated below, we grant the defendants' motions to dismiss the case.

### I. Background

On April 25, 1985, plaintiff Robert Bily filed a complaint alleging that defendant Illinois Central Gulf Railroad Company ("ICG") breached a written agreement to sell him a parcel of land located beside the Calumet Sag Channel in southwest Cook County. Bily alleged that, although he tendered the purchase price to ICG, ICG refused to convey the real estate to him. Subsequently, according to Bily, ICG granted easements on the property to defendants US Telecom, Inc. (formerly United Telecom Communications, Inc.), GTE Sprint Communications Corp. ("GTE Sprint"), and MCI Telecommunications Corporation ("MCI"), for the purpose of installing and operating telecommunications cables and equipment on the property. In relief, Bily sought specific performance of the land sale agreement, a declaration that the easements were null and void, a temporary restraining order, and damages.

The complaint named as defendants ICG, the easement holders, the construction contractors who were alleged to have begun work on the property, and the United States. The United States was named because, according to the complaint, it was a fee simple owner of the property. (A title report prepared by the Chicago Title Insurance Company and attached to the complaint indicated that the United States was the record owner of a portion of the land in dispute). Further, the complaint alleged that "pursuant to various agreements by and between the Defendant ICG, and various Federal Railroad Grants or agreements, the United States of America is obligated to convey the real estate at the direction of ICG." On August 5, 1985, after it became apparent that the Metropolitan Sanitary District of Chicago ("MSD") also claimed an interest in the property, Bily was granted leave to amend his complaint to add MSD as a defendant.

During 1985, this Court entered several injunctive orders, agreed to by the parties, requiring the defendants to maintain the status quo on the property but permitting US Telecom to complete the installation of its telecommunications cable. MCI subsequently decided to reroute its cable to avoid the premises, and GTE Sprint arranged to use US Telecom's cable rather than install its own.

Meanwhile, Bily agreed to commission a survey to assist the parties in sorting out their rights. By the early part of this year, the preliminary results of the survey were serving as the basis for settlement negotiations. In April 1986, the Army Corps of Engineers used the survey to determine that the United States had no interest in

the property. Accordingly, on April 17, 1986, the United States Attorney filed a motion to dismiss stating as follows:

1. Movant has no interest in the real estate, the subject of this lawsuit.

2. The United States Army Corps of Engineers has examined each plat and survey of the property submitted by the plaintiff in this suit.

3. The most recent survey received in March 1986 by the United States Attorney's office was forwarded to the U.S. Army Corps of Engineers which states: "Our records show that the area depicted by the survey (and described or [sic] the attachment hereto) was conveyed to the ICG R.R., except the portion thereof designated 'Apparent Parcel D', colored pink on Segment D furnished to you previously. I am advised that Apparent Parcel D was ICG property, never owned by the Government (Corps)."

Motion of United States of America to Dismiss, Docket Entry No. 53. Without objection from any party, we granted the motion and dismissed the United States from the case.

## II. Jurisdiction

■ The only question before us is whether this Court has subject-matter jurisdiction. In both the original and amended complaints, Bily conceded the lack of complete diversity between the parties: he is a citizen of Illinois, as are ICG and MSD. Instead, Bily sought to base jurisdiction on sections 1 and 3 of the Quiet Title Act of 1972 ("QTA"), 28 U.S.C. §§ 1346(f), 2409a (1982). Section 3 of the QTA provides in part that:

The United States may be named as a party defendant in a civil action under this section to adjudicate a disputed title to real property in which the United States claims an interest, other than a security interest or water rights.

28 U.S.C. § 2409a(a). As the legislative history of the QTA makes clear, this provision constitutes a waiver of the federal government's sovereign immunity in suits to adjudicate title to lands in which it

claims an interest. S.Rep. No. 92–575, 92d Cong., 1st Sess. 1 (1971); H.R.Rep. No. 92–1559, 92d Cong., 2d Sess. (1972), 1972 U.S. Code Cong. & Ad. News 4547, 4551; *Block v. North Dakota,* 461 U.S. 273, 280–84, 103 S.Ct. 1811, 1816–18, 75 L.Ed.2d 840 (1983).

■ Under section 1 of the QTA, exclusive original jurisdiction for quiet-title actions under section 2409a belongs in the federal district courts. 28 U.S.C. § 1346(f). Regarding this latter provision, the United States Supreme Court observed that the "congressional purpose was simply to confine jurisdiction to the federal courts and to exclude the courts of the States, which otherwise might be presumed to have jurisdiction over quiet-title suits against the United States." *California v. Arizona,* 440 U.S. 59, 66, 99 S.Ct. 919, 924, 59 L.Ed.2d 144 (1979).

The defendants first argue that jurisdiction in this Court was never proper because Bily's claim that the United States had an interest in the property was insubstantial from the outset. In their view, the claim against the United States was a mere sham, a contrivance to confer jurisdiction upon the Court.

■ We disagree. While it is true that a federal claim that is "patently without merit," *Hagans v. Lavine,* 415 U.S. 528, 542–43, 94 S.Ct. 1372, 1381–1382, 39 L.Ed.2d 577 (1974), *quoting Bell v. Hood,* 327 U.S. 678, 683, 66 S.Ct. 773, 776, 90 L.Ed. 939 (1946), should be dismissed for want of jurisdiction, Bily had a substantial basis for believing that the United States had a claim on the property. As noted earlier, Bily obtained a title report indicating that the United States was the fee simple owner of a portion of the property, and attached a copy of the report to his complaint. Absent any obvious indications that the report was inaccurate, Bily was entitled to rely on it for purposes of determining who claimed an interest in the property.

The defendants would have us infer from the fact that Bily subsequently commissioned a plat survey of the property that he knew from the outset that the title report

was inaccurate. There is no support in the record for this conclusion. To the contrary, both the timing and contents of the United States' motion to dismiss strongly suggest that the government was not prepared to make a formal disclaimer until it saw the results of the survey procured by the plaintiff. Further, none of the defendants ever called this Court's jurisdiction into question until nearly a year after the filing of the complaint. In short, before the survey was received, all concerned—including this Court—were justified in believing that the United States claimed an interest in the property. As such, Bily was entitled to proceed in federal court. Indeed, given the exclusive jurisdiction provided by section 1346(f), he had no choice but to proceed here.

The defendants next argue that, since the United States has been dismissed and the original basis for federal jurisdiction has dissolved, we should dismiss the entire case. Conceding that jurisdiction ordinarily turns upon the facts as they appear at the time of the suit's commencement, *see Mollan v. Torrance*, 22 U.S. (9 Wheat.) 537, 549, 6 L.Ed. 154 (1824) (Marshall, C.J.); *Smith v. Sperling*, 354 U.S. 91, 93 n.1, 77 S.Ct. 1112, 1114 n.2, 1 L.Ed.2d 1205 (1957), they urge us not to exercise our discretion to entertain the remaining state law claims.

Bily and each of four defendants (ICG, GTE Sprint, US Telecom, and MCI) have filed briefs on the pendent jurisdiction question. Impressive in their scope and erudition, the briefs offer interesting interpretations of the leading case on pendent jurisdiction, *United Mine Workers of America v. Gibbs*, 383 U.S. 715, 86 S.Ct. 1130, 16 L.Ed.2d 218 (1966); examine the implications of subsequent Supreme Court cases such as *Rosado v. Wyman*, 397 U.S. 397, 90 S.Ct. 1207, 25 L.Ed.2d 442 (1970); survey the law in the Seventh Circuit, including the Court of Appeals's recent tendency to view the district courts' discretion to retain pendent claims narrowly, at least when all federal claims are disposed of before trial, *see, e.g., Buethe v. Britt Airlines, Inc.*, 749 F.2d 1235 (7th Cir.1984); *Bernstein v. Lind-Waldock & Co.*, 738

F.2d 179 (7th Cir.1984); express strikingly divergent views of how these legal principles are to be applied in this case; and consider the impact of our decision upon such weighty matters as the relationship between the federal government and the states. In all, the briefs are penetrating in their analysis, soundly reasoned, and engagingly well written. Unfortunately, they overlook the point of law that is dispositive of the case.

Astonishingly, in researching the jurisdictional question, none of the parties apparently thought to consult the statute that brought them here in the first place. We refer them to subsection (d) of section 2409a of the QTA, which provides as follows:

> If the United States disclaims all interest in the real property or interest therein adverse to the plaintiff at any time prior to the actual commencement of the trial, which disclaimer is confirmed by order of the court, the jurisdiction of the district court shall cease unless it has jurisdiction of the civil action or suit on ground other than and independent of the authority conferred by section 1346(f) of this title.

28 U.S.C. § 2409a(d). In contrast to subsection 2409a(a), which considers the circumstances existing at the time of the filing of the complaint, subsection (d) specifically addresses the situation presented in this case, where the United States is named as a defendant but drops out of the suit prior to trial. In such a case, the statute unequivocally directs, jurisdiction under section 1346(f) "shall cease."

It is well settled that, when Congress imposes conditions upon a waiver of sovereign immunity, such conditions must be strictly observed. *Block v. North Dakota*, 461 U.S. at 287, 103 S.Ct. at 1819 (applying rule to QTA's statute of limitations, 28 U.S.C. § 2409a(f)). In effect, subsection (d) creates two conditions subsequent to the jurisdiction conferred by section 1346(f): if (1) the United States disclaims all interest in the property, and (2) the court confirms the disclaimer, the

court's subject-matter jurisdiction ceases unless it has some foundation outside section 1346(f). Although, strictly speaking, subsection (d) conditions the QTA's jurisdictional grant (§ 1346(f)) rather than its waiver of immunity (§ 2409a(a))—since waiver is not the issue when the sovereign lacks any interest in the property—we have no doubt that it imposes valid limitations on federal court jurisdiction. Nor can there be any question that both conditions were met in this case: by filing its motion to dismiss, the United States disclaimed all interest; and by granting the motion, we confirmed.

█ Subsection (d) allows for the possibility that a court may have jurisdiction "on ground other than and independent of" section 1346(f). At first glance, it might appear that this clause preserves the court's power to exercise pendent jurisdiction under the doctrine enunciated in *Gibbs*. This interpretation cannot hold up to closer scrutiny, however. As the court observed in *W.H. Pugh Coal Co. v. United States*, once subsection (d) eliminates section 1346(f) as a possible source of jurisdiction, there is simply nothing left for the state law claims to be pendent to. 418 F.Supp. 538, 539 (E.D.Wis.1976) (only prior reported decision on point).

Viewed in light of the purposes of the QTA, the procedure mandated by subsection (d) makes perfect sense. The drafters of the QTA wanted to ensure that the United States would be subject to suit only in its own courts. *See* S.Rep. No. 92–575 at 7 ("Since we believe it is the better policy to litigate questions of the Government's title in the Federal courts, the draft bill provides for exclusive jurisdiction of suits under the statute in the U.S. district courts."). At the same time, they did not want to intrude upon the state courts' customary power over quiet-title disputes concerning land located in the state. An early version of the Senate bill that became the QTA even provided that, if jurisdiction were to cease under subsection (d), the district court would "remand" the case, as if it had been removed under 28 U.S.C.

§ 1447, to the courts of the state where the real property was located. S. 216, 92d Cong., 1st Sess., 117 Cong.Rec. 46380–81 (1971). Although this particular procedure was abandoned, subsection (d) still effectuates the congressional purpose of minimizing federal encroachment upon traditional state prerogatives by divesting the district court of jurisdiction as soon as the federal interest evaporates. Indeed, since quiet-title actions under the QTA are likely to be determined entirely by state law, *see Key v. Wise*, 629 F.2d 1049, 1064–65 & n.9 (5th Cir.1980), subsection (d) may have been needed to save the QTA from constitutional challenge. *See National Mutual Insurance Co. v. Tidewater Transfer Co.*, 337 U.S. 582, 646–55, 69 S.Ct. 1173, 1199–1209, 93 L.Ed. 1556 (1949) (Frankfurter, J., dissenting); Note, *The Theory of Protective Jurisdiction*, 57 N.Y.U.L.Rev. 933 (1982).

In sum, section 2409a(d) of the QTA leaves no room for the sort of wide-ranging inquiry contemplated by *Gibbs*; its directive is mandatory. As such, we have no choice but to dismiss for lack of subject-matter jurisdiction. We reach this conclusion with some regret, sharing as we do the plaintiff's view that considerable progress in this litigation had been made at the time the jurisdictional issue was raised. Nevertheless, there is no reason why our present action, which merely recognizes the absence of judicial power, should impede the amicable resolution that had been developing between the parties.

**Conclusion**

The defendants' motions to dismiss for lack of subject-matter jurisdiction are granted without prejudice. In addition, for reasons that should be obvious in light of this opinion, we deny ICG's motion for Rule 11 sanctions against the plaintiff.

An appropriate order will enter.